**Daniel HUFFAKER**

v.

**BUCKS COUNTY DISTRICT ATTORNEY'S OFFICE and Chalfont Borough Police Department.**

**Civ. A. No. 88–7218.**

United States District Court,
E.D. Pennsylvania.

March 5, 1991.

---

Sayde J. Ladov, Philadelphia, Pa., for Daniel Huffaker.

Robert G. Hanna, Jr., Philadelphia, Pa., for Chalfont.

Stephen P. Moyer, Southampton, Pa., for Bucks Co. Dist. Atty.

## MEMORANDUM

WALDMAN, District Judge.

### I. *Background*

Presently before the court are defendants' motions for summary judgment in this 42 U.S.C. § 1983 case. Plaintiff alleges that his First, Fourth, Fifth, Eighth and Fourteenth Amendment equal protection rights were violated when Chalfont Borough police charged him with sexually abusing a young retarded woman in his care without probable cause, and when the Bucks County District Attorney's Office did not promptly dismiss the charges. Plaintiff alleges that he is not guilty and that as a result of defendants' actions, was deprived of his "good name and reputation" and suffered from "extreme mental anxiety."

### II. *Legal Standard*

Federal Rule of Civil Procedure 56(c) directs a court to enter summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The court must view the underlying facts and all inferences therefrom in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Only facts that may affect the outcome of a case under applicable law are "material." *Id.* at 248, 106 S.Ct. at 2510. Once a summary judgment motion is filed, the non-movant must identify evidence on which a verdict in his favor could be sustained. *See*

*Childers v. Joseph,* 842 F.2d 689 (3d Cir. 1987).

### III. *Facts*

The record consists of the depositions of plaintiff, Chalfont Police Chief Harry Gacad and Bucks County Assistant District Attorney Terence Houck, as well as several exhibits including pertinent police reports and reports from Claudia Denelsbeck–Laskow and Thomas Cramer who provided professional support services to plaintiff. Virtually all of the pertinent facts are uncontroverted and, viewed in a light most favorable to plaintiff, are as follow.

In October of 1987, Karen Chester, a mentally retarded 22–year–old, was living with her parents in Southampton, Bucks County. She spent the weekend of October 16–18, 1987 at the Chalfont Respite Apartment Program for mentally disabled persons. Upon returning home on the evening of October 18, Karen related to her parents that during her stay at Chalfont someone there named Dan made her kneel and placed his penis in her mouth while also fondling her breast. Mrs. Chester promptly relayed this information to Harry Gacad, the Chalfont police chief.

Chief Gacad proceeded to investigate Karen's allegation. He interviewed Karen. He interviewed Mrs. Chester. He ascertained that the only person named Dan with access to Karen Chester at the relevant time and place was plaintiff. He sought information from the director of mental retardation services at Lenape Valley Foundation who had worked with Karen for six years, and from a developmental disabilities counselor who had worked with Karen for five years. The former, Ms. Denelsbeck–Laskow, reported that Karen functioned in the "mild to moderate range of mental retardation," and that she "provides accurate and reliable information." The latter, Mr. Cramer, reported that he had never known Karen "to invent or fantasize events," and that she was "a reliable and accurate source of information."

Chief Gacad then waited for a requested interview of plaintiff. Plaintiff ultimately declined to be interviewed after consulting with counsel. Chief Gacad then presented his findings to an assistant district attorney for review.

On November 24, 1987, on the affidavit of Chief Gacad, a formal criminal complaint was issued charging plaintiff with violating several laws proscribing non-consensual sexual conduct and indecent exposure. Plaintiff was advised of the charges and voluntarily presented himself at the police station. He was promptly arraigned and released on bail. Plaintiff was at no time handcuffed, incarcerated or physically abused. A preliminary hearing was scheduled for January 28, 1988.

The hearing was postponed at plaintiff's request. The authorities honored plaintiff's counsel's request for a lineup. A lineup was conducted on March 24, 1988, including plaintiff and two of his brothers among others. Plaintiff testified that he wore a beard and eyeglasses in October 1987. He appeared in the lineup without a beard or glasses. Karen Chester looked away and failed to identify anyone in the lineup.

Terry Houck, the assistant district attorney assigned to the case, then had discussions about the case with Mrs. Chester, Chief Gacad and others. Mrs. Chester concluded that it was undesirable to subject Karen to the emotional trauma of a trial and asked Mr. Houck to drop the charges against plaintiff. On June 2, 1988, Mr. Houck dismissed the charges against plaintiff. On September 19, 1988, plaintiff initiated this action. There is no evidence that prior to June 2, 1988, plaintiff or his counsel ever moved to dismiss the state charges.

### IV. *Discussion*

To prevail on a § 1983 claim, a plaintiff must prove that he was deprived of a federally secured right by a defendant acting under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Cohen v. City of Philadelphia,* 736 F.2d 81, 83 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). To sustain a § 1983 claim against a municipality, a plaintiff must show that the action in

question was taken pursuant to a governmental policy. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A single action by a municipal official, however, may constitute a "policy" if he had final authority to pursue a course of action regarding the matter at issue and deliberately chose among available alternatives to do so. *Pembaur v. Cincinnati*, 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452 (1986); *Bello v. Walker*, 840 F.2d 1124, 1129–30 n. 4 (3d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

It is unquestioned that Chief Gacad and Mr. Houck were acting under color of state law at all relevant times. Mr. Houck, at least, had and exercised final decision-making authority to dismiss the charges against plaintiff. Mr. Houck testified that it is the practice and policy of the Bucks County District Attorney's Office that the assistant district attorney assigned to a case makes the ultimate decision of whether to prosecute or nolle pros. As Borough police chief, presumably Mr. Gacad was a key decisionmaker for that municipality as to whether and when to initiate a sworn criminal complaint. At least the record does not clearly preclude such a finding.

The court will proceed to determine whether plaintiff has adduced sufficient evidence to establish a violation of the constitutional rights on which he predicates his action.

### A. *Fifth Amendment Claim*

 Plaintiff alleges that defendants violated his "immunity under the Fifth Amendment from punishment without due process of law." The due process clause of the Fifth Amendment does not limit actions of state officials. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Brock v. North Carolina*, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953); *Knoetze v. United States*, 634 F.2d 207, 211 (5th Cir.), *cert. denied*, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981). Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Fifth Amendment claim.

### B. *First Amendment Claim*

Plaintiff states that defendants violated his First Amendment rights. There is no factual allegation in the complaint and not one iota of evidence has been adduced which even suggests a violation of rights secured by the First Amendment, let alone evidence from which a jury reasonably could find such a violation. The court is utterly baffled as to how plaintiff's First Amendment rights may have been implicated in view of his factual allegations and the evidence of record. In plaintiff's response to defendants' motions, counsel does not even offer a clue as to the basis for the First Amendment claim.

Defendants are entitled to judgment as a matter of law on plaintiff's First Amendment claim.

### C. *Eighth Amendment Claim*

 Plaintiff claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's prohibition of cruel and unusual punishment applies only to prisoners who have been convicted of a crime. *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977); *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir.1987); *Romeo v. Youngberg*, 644 F.2d 147, 156 (3d Cir.1980). It is uncontested that plaintiff was never convicted of a crime or even incarcerated. There is absolutely no evidence from which one could find a violation of plaintiff's Eighth Amendment rights by these defendants.

Defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.

### D. *Fourth Amendment Claim*

 Plaintiff alleges that his Fourth Amendment rights were violated when he was charged without probable cause. Probable cause to arrest and initiate criminal proceedings exists where the charging officer has knowledge of facts and circum-

stances sufficient to permit a prudent person of reasonable caution to believe that the person charged has committed an offense. *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). *See also Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990); *Edwards v. City of Philadelphia,* 860 F.2d 568, 571 n. 2 (3d Cir.1988); *U.S. v. Belle,* 593 F.2d 487, 497 (3d Cir.), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 277 (1979). Further, "law enforcement authorities are permitted and expected to draw reasonable inferences based upon their knowledge and experience." *U.S. v. Filiberto,* 712 F.Supp. 482, 485 (E.D.Pa.1989) (quoting *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975)). The Constitution does not guarantee that only guilty persons will ever be arrested. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979).

■ At the time plaintiff was charged, Chief Gacad knew that Karen Chester reported being sexually assaulted by a Chalfont employee named Dan. He knew that she had promptly reported the alleged incident. He knew that two professionals who had worked with Karen for a number of years knew her to be credible and reliable. He knew that the only person named Dan with access to Karen at the time and place in question was the plaintiff. The Chief gave plaintiff an opportunity to present his version but he declined. The Chief knew that plaintiff continued to have access to vulnerable young women at Chalfont.

Plaintiff does not suggest that Chief Gacad has not been candid in reiterating what he knew at the time he charged plaintiff. Rather, plaintiff asserts that it was not reasonable for the Chief to act on this information because there were no marks on Karen's body and she is inherently unworthy of belief because of her condition.

There is nothing in Karen's story from which one would assume that she must have sustained bruises, scratches, contusions or other marks. The presence of such marks might be probative but their absence is not. A victim should not have to show marks on her body to be taken seriously and to have authorities pursue someone reasonably suspected of sexually abusing her.

Karen is mildly to moderately mentally retarded. This does not make her uncredible. Professionals who were well acquainted with Karen found her to be credible. To suggest seriously that persons with mental disabilities should not be believed about what is done to them in the absence of impartial eyewitnesses is to open the door to the abuse of some of our most vulnerable citizens. Chief Gacad reasonably concluded that Karen Chester is credible.

Because no reasonable person could find from the uncontroverted facts of record that when Chief Gacad charged plaintiff he lacked probable cause to do so, defendants are entitled to summary judgment on plaintiff's Fourth Amendment claim. *See Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984). *See also Gero v. Henault,* 740 F.2d 78, 84 (1st Cir.1984).

### E. *Fourteenth Amendment Claim*

■ Plaintiff alleges that defendants "willfully, wantonly, recklessly and negligently" failed to drop the charges against him until nine weeks after the inconclusive lineup. Plaintiff claims that following the lineup, defendants had no reason to maintain the charges against him. Plaintiff alleges that in doing so, defendants deprived him of "his right under the Fourteenth Amendment to equal protection of the laws."

■ The essence of the equal protection clause is a requirement that similarly situated persons be treated alike. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253, 87 L.Ed.2d 313 (1985); *Mahone v. Addicks Utility Dist. of Harris County,* 836 F.2d 921, 932 (5th Cir.1988); *Gobla v. Crestwood School District,* 609 F.Supp. 972, 978 (M.D.Pa.1985). Plaintiff has alleged no

facts and has adduced absolutely no evidence to show that defendants treated him differently in any material way from others similarly situated.

■ Although never articulated, one conceivably could, with some difficulty and charity, read into plaintiff's complaint a Fourteenth Amendment due process allegation. Again, however, he has failed to adduce sufficient evidence to sustain such a claim.

It is uncontroverted that during the nine-week lapse of time complained of, the prosecutor discussed and contemplated whether to proceed to trial in view of Mrs. Chester's concern about the potential emotional impact on Karen. A prosecutor can take a reasonable time, certainly encompassing nine weeks, to consider whether a case properly initiated should proceed to trial in view of subsequent developments without violating a criminal defendant's due process rights.

A criminal defendant who has an opportunity to move for dismissal of charges on whatever legal grounds he believes entitle him to such relief is not denied due process by the mere pendency of charges properly initiated against him. During the nine-week period complained of, plaintiff did not move to have the charges dismissed. He does not allege and there is no evidence to suggest that plaintiff attempted to file a motion to dismiss but was denied access to the courts or otherwise deprived of an opportunity to do so.

Plaintiff suggests that he was entitled to have these charges dropped after the line-up. Karen's refusal or inability positively to identify anyone in the lineup did not Constitutionally compel the immediate dismissal of the charges against plaintiff. A prosecutor may prove the guilt of a defendant by circumstantial evidence. Mr. Houck testified, without contradiction, that he believed he had enough evidence against plaintiff to secure a conviction.

■ Plaintiff alleges that the pendency of these charges injured his reputation. There is no liberty or property interest in one's reputation and, unless accompanied by a tangible loss of privileges or benefits, reputational injury inflicted by the State is not actionable under § 1983. *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Setliff v. Memorial Hospital of Sheridan County,* 850 F.2d 1384, 1386 (10th Cir.1988); *Thomas v. Kippermann,* 846 F.2d 1009, 1010 (5th Cir. 1988); *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986); *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984); *Underwood v. Pritchard,* 638 F.2d 60, 62 (8th Cir.1981); *Walker v. Cahalan,* 542 F.2d 681, 683 (6th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 357 (1977); *Balliet v. Whitmore,* 626 F.Supp. 219, 224–25 (M.D.Pa.), *aff'd,* 800 F.2d 1130 (3d Cir.1986); *Chaudhry v. Prince George's County,* 626 F.Supp. 448, 454 (D.Md.1985).

■ Plaintiff has produced no evidence even to suggest that defendant waited nine weeks to make a final decision to nolle pros because of a willful or reckless disregard for plaintiff's rights or well-being. Indeed, in his testimony, the only inappropriate reason for delay postulated by plaintiff is defendant's negligence. A § 1983 due process claim cannot be sustained for negligent conduct. *See Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1143 (3d Cir. 1990).

## V. *Conclusion*

Plaintiff's First, Fifth and Eighth Amendment claims are totally unsupported by the facts and the law. His Fourteenth Amendment equal protection claim is totally unsupported by the facts. His Fourth Amendment claim fails because no reasonable jury could find an absence of probable cause to charge plaintiff on November 24, 1987. Plaintiff also has not made out a Fourteenth Amendment due process claim. There is no evidence from which one could find that defendants acted willfully or recklessly to deprive plaintiff of any cognizable federal rights.

In view of this determination, the court need not address defense claims of immuni-

ty. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976); *Cross v. Meisel,* 720 F.Supp. 486, 489 (E.D.Pa.1989).

An appropriate order will be entered.

## ORDER

AND NOW, this 5th day of March, 1991, upon consideration of defendants' Motions for Summary Judgment and plaintiff's responses thereto, IT IS HEREBY ORDERED that said Motions are GRANTED and JUDGMENT is entered for the defendants and against the plaintiff in this case.