Charles NELSON, et al., Plaintiffs,

v.

Todd MATTERN, et al., Defendants.

Civ. A. No. 92–4585.

United States District Court,
E.D. Pennsylvania.

Jan. 14, 1994.

Roger B. Reynolds, Jr., Reynolds, McLaughlin, Josel & Reynolds, Norristown, PA, for plaintiffs.

Jane M. Shields, Siana & Shields, Exton, PA, Claudia M. Tesoro, Office of Atty. Gen., Philadelphia, PA, for defendants.

## ORDER

ANITA B. BRODY, District Judge.

AND NOW, this 14th day of January 1994, I have considered the State Police Defendants' Motion for Summary Judgment and Todd Mattern's Motion for Partial Summary Judgment and plaintiffs' response and find that:

1. This civil rights suit is brought by plaintiffs Charles Nelson, Stephen Spangler and Jerry Berger under 42 U.S.C. § 1983. Plaintiffs' civil rights claims include Fourth Amendment violations for arrest without probable cause, excessive force and unlawful search. State police defendants are Timothy Shay, Timothy Sprowls, Douglas Brose, and John Dell. Local police defendant is Todd Mattern.

2. In their motion for summary judgment, state police defendants contend that they are entitled to judgment as a matter of law and that they are entitled to qualified immunity. Defendant Todd Mattern moves for summary judgment, and raises the defense of qualified immunity, only on the issue of probable cause for plaintiffs' arrests.

3. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendants are entitled to summary judgment only if no reasonable resolution of the conflicting evidence and the inferences that could be drawn from that evidence could result in a judgment for plaintiffs. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is a dispute or disagreement over what inferences reasonably could be drawn from the facts, even if those facts are undisputed, summary judgment is improper. *See Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir.1991).

4. For the purposes of summary judgment, plaintiffs' version of the facts is taken as true. All three plaintiffs are white males. Nelson is 38 years old, 5'10" and 175 lbs; Spangler is 25 years old, 6'2" and 170 lbs; and Berger is 27 years old, 6' and 225 lbs. On August 8, 1990, 2:30 p.m., after drinking some beers at a club, plaintiffs took a six pack of beer to a swimming hole near a covered bridge at West Seven Stars Road and Mill Road ("covered bridge area"). (Deposition of Jerry Berger at 22, 25.)

5. Later that afternoon at the covered bridge area, Berger saw police cars next to Nelson's van and policemen talking with some teens. Defendants Shay and Sprowls, standing with defendant Mattern, called Berger over to the group. When Berger came over, Shay and Sprowls immediately arrested him, put on tight handcuffs, and took him to defendant Brose in a car, where he was interrogated. (Berger Dep. at 31–33, 44.)

6. Mattern called to Nelson when he came looking for Berger. According to Nelson, Mattern "grabbed me by the arm, threw me on the hood of the car, put my arms behind me, and handcuffed me." (Deposition of Charles Nelson at 32–33, 35–36.) Mattern then held Nelson's face on the hood of the running car. (Nelson Dep. at 37.) Brose looked into Nelson's van, which Shay, Sprowls and Mattern then searched. (Nelson Dep. at 39.)

7. Spangler appeared from the bushes and started to sit under a tree. When Mattern called to him he walked away. Dell then began running after him, so Spangler ran. Dell tackled Spangler and Brose held him bending back his wrist, handcuffed him, and later placed him in the car with Nelson. (Deposition of Stephen Spangler at 28–37.)[1]

8. Brose drove Berger to the East Vincent police station, questioned him, and handcuffed him to a chair. (Berger Dep. at 45, 50.)

9. Mattern drove Nelson and Spangler to the same station. When Nelson was getting out of the car, Mattern grabbed his leg and pulled him to the ground. Mattern also hit

---

1. Although plaintiffs' brief states that Mattern chased and tackled Spangler, Dell admits that he is the one who pursued Spangler. (Deposition of Dell at 45–56.)

Spangler in the face. Inside the station Nelson and Spangler were handcuffed to the wall. (Nelson Dep. at 51; Spangler Dep. at 42.)

10. Plaintiffs finally were released after 10:00 p.m. and no charges were ever brought. Nelson and Spangler went to the hospital, where the doctor found that Nelson's hip was partially dislocated and that Spangler's rib was fractured.[2] Spangler could not work for the next three days due to soreness from the tight handcuffs. (Spangler Dep. at 61.)

11. Although not taken as true, defendants' version of the facts is included below to provide some context for the incident. On August 8, 1990, Dr. George Govette arrived at his home as it was being burglarized. As the burglars drove away, Dr. Govette chased them in his car to a field, where shots were fired and the burglars fled. Dr. Govette contacted the police and described the burglars as three white males, mid-20s to early 30s, driving a beige Chrysler sedan. Later that day, the suspect car was found and identified as belonging to a John Hess. The car had been reported as stolen from the covered bridge area. (State Def. Br. Exhibit O, [hereinafter Rpt.] at 5, 10–12.)

12. That afternoon defendants Shay and Sprowls happened to meet Hess at a store during their patrol. (Rpt. at 12.) Hess reiterated to them that his car had been stolen and Shay and Sprowls became suspicious when they realized it was the car involved in the shootout. They wanted Dr. Govette to do a "drive-by" to try to identify Hess. During the drive-by, Dr. Govette was unable to identify Hess as one of the burglars. (Rpt. at 13.)

13. Defendants' account of the subsequent events at the covered bridge area differs dramatically from plaintiffs' account. At 7:47 p.m., Mattern and Officer Scotty Blevins (not a defendant) were at the covered bridge area. (Deposition of Scotty Blevins at 6.) Mattern had heard of the Govette incident earlier. (Deposition of Todd Mattern at 26.) Shay and Sprowls arrived at the scene, saw Mattern and Blevins talking to people on the side of the road, and pulled over to touch base with the officers. (Deposition of Timothy Sprowls at 29–31.) At the same time, Corporal Alvaro Cordone (not a defendant) and defendant Dell were driving Dr. Govette home from the drive-by when they passed the covered bridge area. Police activity already in progress there caught Dr. Govette's eye. Dr. Govette saw Berger talking to police but not in handcuffs and said "he looks familiar. You're not going to let him go are you?" (Deposition of Dr. George Govette at 57; Dell Dep. at 27–29; Deposition of Alvaro Cordone at 31–33.) Defendants state that Berger was then arrested partially based on Dr. Govette's identification, but do not explain how the arresting officers on the street learned of Dr. Govette's ID in the car. According to defendants, it was not until after Berger and Nelson were arrested that Cordone pulled his car over and told the others about Dr. Govette's ID. Then Spangler appeared and Mattern called to him, thinking he might have been one of Dr. Govette's assailants. (Mattern Dep. at 41–44.) Spangler ran and Dell tackled him.

14. Defendants contend that defendants were drunk and disorderly the entire time. (Sprowls Dep. at 54; Shay Dep. at 31–32.)[3]

15. Plaintiffs bring the following claims:

a. Berger: Arrest without probable cause; and unlawful seizure of person and deprivation of liberty without due process

b. Nelson: Arrest without probable cause; unlawful seizure of person and deprivation of liberty without due process; excessive force against Mattern; unlawful search; and violation of the Eighth Amendment

---

2. This information is verified by exhibits submitted with plaintiffs' pretrial memorandum, *see* Exhibits P–3 & P–4, and referenced in state police defendants' motion for summary judgment at 33 n. 21.

3. Plaintiffs deny being intoxicated, but acknowledge defendants' exhibit stating that Nelson's blood alcohol content was .13% at 10:30 p.m.

*See* Plaintiffs' Reply Memorandum to Reply Memorandum at 16; Mattern's Motion for Partial Summary Judgment Ex. I (blood alcohol tests taken at the hospital that night put Nelson's blood alcohol at 173.4 mg/dl). 75 Pa. C.S.A. § 3731 makes it illegal to operate a vehicle with .1% blood alcohol.

c. Spangler: Arrest without probable cause; unlawful seizure of person and deprivation of liberty without due process; excessive force against Brose, Dell and Mattern; and violation of the Eighth Amendment

### QUALIFIED IMMUNITY

16. State police defendants raise the defense of qualified immunity to the claims for arrest without probable cause, excessive force and unlawful search;[4] Mattern raises the same defense to the claim for arrest without probable cause. Officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court must focus on the "objective legal reasonableness" of the conduct and defendants bear the burden of demonstrating an entitlement. *Id.* at 815, 102 S.Ct. at 2736. Qualified immunity should be denied only if "a reasonable jury could find that the unlawfulness of [defendants'] actions was so 'apparent' that no reasonable [official] could have believed his actions were lawful." *Lee v. Mihalich,* 847 F.2d 66, 69 (3d Cir.1988).

17. *Arrest without probable cause.* Probable cause exists if " 'at the moment the arrest was made ... the facts and circumstances within [defendants'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [plaintiff] had violated [the law]." *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Defendants' argument proceeds as follows: Even assuming plaintiffs were arrested immediately upon emerging from the swimming hole, there was probable cause to arrest plaintiffs at that time for the burglary. Alternatively, (1) the stop was an investigatory stop, not an arrest; (2) there was reasonable suspicion that plaintiffs had committed the burglary; and (3) reasonable suspicion developed into probable cause to

arrest for the burglary before transportation to the police station. Alternatively, there was reasonable suspicion or probable cause to stop plaintiffs for public drunkenness and disorderly conduct. These arguments will be addressed in turn.

18. Under plaintiff's facts, Dr. Govette must have identified plaintiffs after they were arrested. Therefore, the arrests were supported only by Mattern's knowledge of the Govette incident and the fact that plaintiffs were at West Seven Stars Road, where the suspect car disappeared. Even that knowledge is an objectively unreasonable basis for defendants' belief that there was probable cause to arrest plaintiffs.

19. It is well settled that officers may temporarily detain a person upon "reasonable suspicion that criminal activity may be afoot." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The scope of the stop must be reasonably related to the suspicious circumstances, though police officers may take steps "reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985). Those steps must be the "least intrusive means" necessary to effect the goals of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

20. Defendants claim that, even if Berger and Nelson were handcuffed immediately after coming out of the woods, the procedure was merely a permissible Terry stop in the investigation of the burglary and required only reasonable suspicion. The stop only developed into an arrest during transportation to the police station, when the police did have probable cause to arrest for the burglary.

21. The detention of Berger and Nelson was not merely a Terry stop. Other circuits have addressed whether handcuffs turn an administrative stop into an arrest. Many courts have held that handcuffs do not transform a stop to an arrest if they are

---

4. For the purposes of summary judgment, state police defendants assert that they acted "cooperatively and/or acquiesced to each others ac-tions.... regardless of which state police defendant actually did what, all are entitled to judgment as a matter of law." (Def. Br. at 20 n. 10.)

needed to ensure safety[5] or to ensure that the suspect does not flee.[6]

22. Here only a strained interpretation of the events supports a conclusion that Berger or Nelson was dangerous or inclined to flee. If Mattern's knowledge of the burglary and the shots fired at the field did not support the conclusion that plaintiffs were the armed burglars, plaintiffs posed no threat of danger or of fleeing. Therefore, the handcuffing of plaintiffs would be an arrest not supported by probable cause.

23. Spangler admits that he ran after Dell began chasing him. Spangler, therefore, may have presented a risk of flight although there still was no basis for believing that he was dangerous. Even if his stop were merely a Terry stop, his detention still required reasonable suspicion. Again, the only basis for reasonable suspicion was Mattern's knowledge of the earlier burglary. It was apparent that Mattern's knowledge that a burglary had taken place did not create even reasonable suspicion that Spangler committed the burglary.

24. If plaintiffs (or at least Spangler) were detained in a proper Terry stop initially, probable cause had to have developed during transportation to the police station, when defendants admit the stop developed into an arrest. By that time, defendants learned of Dr. Govette's tentative ID. Even under defendants' version of the facts, the ID was merely tentative, and corroborated by little else. Therefore, the belief that probable cause developed in the car is also objectively unreasonable.

25. Finally, defendants argue that the events created reasonable suspicion or probable cause that plaintiffs were guilty of public drunkenness[7] and disorderly conduct.[8] Plaintiffs admit that they drank earlier at a club and brought a six-pack of beer to the swimming hole. But neither plaintiffs' nor defendants' account permits the inference that plaintiffs appeared drunk and disorderly immediately upon emerging from the swimming hole. Defendants' belief that there was reasonable suspicion or probable cause that plaintiffs were guilty of either the burglary or drunk and disorderly conduct was objectively unreasonable.

For these reasons I will deny state police defendants' and Mattern's requests for qualified immunity on the claim of arrest without probable cause.

26. *Spangler's excessive force claim.* Spangler claims that Brose and Dell used excessive force during his arrest and that Mattern used excessive force at the police station.[9] An excessive force claim "in the course of an arrest, investigatory stop, or

---

5. *See, e.g., United States v. Merkley,* 988 F.2d 1062 (10th Cir.1993) (suspect threatened to kill someone and acted violently by pounding fists on steering wheel); *United States v. Hastamorir,* 881 F.2d 1551 (11th Cir.1989) (officers justified in removing suspects from car and immediately handcuffing them where driver moved car eight feet toward officer after being asked to stop); *United States v. Miller,* 974 F.2d 953 (8th Cir. 1992) (handcuffs for minimal time was least intrusive means for drug trafficking suspects who may be armed and outnumbered police six to three); *United States v. Sanders,* 994 F.2d 200 (5th Cir.) (upholding handcuffing of possibly armed suspect who remained standing after being ordered to lie down) *cert. denied* —— U.S. ——, 114 S.Ct. 408, 126 L.Ed.2d 355 (1993).

6. *See United States v. Purry,* 545 F.2d 217 (D.C.Cir.1976) (upholding handcuffing of suspect in bank robbery after officer saw him "walking rapidly, sweating profusely, looking excited and as though he might have been running. There appeared to be dirt on [his] leg.").

7. A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity. 18 Pa. C.S.A. § 5505.

8. A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior;
(2) makes unreasonable noise;
(3) uses obscene language, or makes an obscene gesture; or
(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
18 Pa. C.S.A. § 5503.

9. Mattern has not moved for summary judgment on the excessive force claim against him. Mattern also has not moved for summary judgment on Nelson's excessive force claim against him.

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). The analysis balances the nature of the intrusion against the governmental interests at stake. *Id.* at 396, 109 S.Ct. at 1871. The Supreme Court established three factors for the factfinder to consider: (1) the severity of the crime at issue, (2) whether the suspect is an immediate threat to officers or others, (3) whether the suspect is actively resisting arrest or fleeing. *Id.*

▇▇ 27. Several cases illustrate the fact-specific nature of the excessive force analysis. In one Third Circuit case, the court acknowledged that it might have been excessive force during an arrest if the police had "pulled [plaintiff's] feet out from under him and dragged him down a flight of stairs," fracturing his ribs. *Brown v. Borough of Chambersburg,* 903 F.2d 274 (3d Cir.1990).[10] Another court held that tight handcuffs and pushing suspects was justified where suspects were intoxicated and resisting arrest. *Greiner v. City of Champlin,* 816 F.Supp. 528, 542 (D.Minn.1993). Still another court held that manhandling and pushing suspects was unwarranted. *Melson v. Kroger Company,* 578 F.Supp. 691, 697 (S.D.Ohio 1983).

28. Under *Graham,* the determination of whether defendants' force was excessive depends on the crime Spangler may have committed, the threat he posed, and his risk of flight. Defendants' entitlement to qualified immunity depends on the reasonableness of the conclusion that the force used was not excessive. Defendants' initial belief that Spangler was guilty of burglary or even drunk and disorderly conduct was unreasonable. Although Spangler did flee from the police, no evidence suggests that he was armed. Therefore, forcefully tackling him and holding him at the scene was unreasonable, precluding qualified immunity on this claim.

▇▇ 29. *Nelson's unlawful search claim.* In one footnote, defendants explain that the search of Nelson's van was justified under the automobile exception to the warrant requirement. *United States v. Rickus,* 737 F.2d 360, 367 (3d Cir.1984). The search was lawful if defendants had "probable cause to suspect that the automobile contained evidence of a crime." 737 F.2d at 367. Defendants searched the van before Dr. Govette's ID. This claim, therefore, rests on the officers' initial belief that plaintiffs had committed the crime of burglary. Because that belief was unreasonable, the search was also unreasonable, precluding qualified immunity on this claim.

## SUMMARY JUDGMENT ON THE CLAIMS

▇▇ 30. *Arrest without probable cause, excessive force, unlawful search.* Based upon the same analysis of the facts, I will deny summary judgment on plaintiffs' claims for arrest without probable cause, excessive force and unlawful search. There are outstanding genuine issues of material fact that, if resolved in favor of the plaintiff, would permit a reasonable jury to find for plaintiffs on these claims. Where, as here, the facts are confusing and highly controverted, the court should not be the one to piece together events and manufacture reasonable inferences. The case should be presented to a jury for a careful consideration of all the evidence.

▇▇ 31. *Eighth Amendment violations.* Nelson and Spangler bring Eighth Amendment claims for their treatment during the arrests. These claims lack merit because the Eighth Amendment applies only to prisoners who have been convicted of a crime. *Huffaker v. Bucks County District Attorney's Office,* 758 F.Supp. 287, 290 (E.D.Pa.1991). I will therefore grant the motion for summary judgment on this claim.

▇▇ 32. *Due process.* Plaintiffs state separate claims for arrest without probable

---

**10.** In the lower court decision, the district court had made findings of fact about the arrest to determine whether the claim was frivolous and warranted an award of attorneys' fees. The Third Circuit held that the district court was not clearly erroneous in finding that the police led the plaintiff down the stairs, because only plaintiff's testimony supported the allegation of force. 903 F.2d at 277.

cause and for unlawful seizure of person and deprivation of liberty without due process. These claims are based on the exact same occurrence—the allegedly improper arrests of plaintiffs. Cases do not analyze this type of claim as a due process violation. Rather, the claims are properly analyzed as Fourth Amendment violations for arrest without probable cause. *Cf. Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (excessive force claim properly analyzed under "Fourth Amendment's prohibition against unreasonable seizures of the person"). I will therefore grant summary judgment for defendants on this claim.[11]

Therefore, it is ORDERED that:

1. Summary judgment and the request for qualified immunity is DENIED as to

a. Berger's claim for arrest without probable cause

b. Nelson's claim for arrest without probable cause

c. Nelson's claim for unlawful search of his van

d. Spangler's claim for arrest without probable cause

e. Spangler's claim for excessive force against defendants Brose and Dell

2. Summary judgment for defendants is GRANTED as to the claims against them for Eighth Amendment violations and unlawful seizure of person and deprivation of liberty without due process.

---

11. By agreement of the parties, claims against defendants in their official capacities and pen-

dent state law claims are dismissed.