Marvin **PRESLEY**, Plaintiff,

v.

Clifford **MORRISON**, Defendant.

Civil Action No. 94–4571.

United States District Court,
E.D. Pennsylvania.

Dec. 10, 1996.

Marvin Presley, Plaintiff pro se.

Kevin J. Kotch, Eric B. Henson, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Marvin Presley filed this action *pro se* on September 9, 1994, claiming that Defendant Clifford Morrison had violated his Fourth, Eighth and Fourteenth Amendment rights. Presley alleges that he was unlawfully arrested, subjected to cruel and unusual punishment, and denied due process of law when Morrison, a probation officer, arrested him for an alleged violation of his probation. Morrison has moved for summary judgment. After considering the facts in light most favorable to Plaintiff, the non-moving party, I will grant Morrison's motion.

## FACTS:

On August 1, 1990, Presley entered a guilty plea in the Philadelphia Court of Common Pleas to a charge of the robbery of his ex-girlfriend Mary Byrd. He was sentenced to a term of time served to 23 months, to be followed by one year of probation. Presley was subsequently paroled and placed under the supervision of the Philadelphia Adult Probation Department. Morrison was his probation officer.

In April, 1992, Presley's parole was revoked after a hearing at which it was found that he had harassed and threatened Byrd. However, on January 13, 1993, Presley was again paroled, so that he might complete his G.E.D. The sentencing judge, the Honorable Legrome Davis, explicitly conditioned Presley's parole and probation on his leaving Byrd alone, maintaining employment, and pursuing a G.E.D. Presley claims that Morrison was not his probation officer at the time of this release.

On May 17, 1993, Byrd called Morrison by telephone complaining that Presley had assaulted her. The next day Morrison left a message at Presley's home instructing him to report to the probation department within 24 hours. On May 19, Presley reported to Morrison and denied having assaulted Byrd.

On May 25, 1993, the day before Presley's next scheduled appointment with the probation department, Morrison received a phone call from Detective Raymond Behl of the Philadelphia Police Department, reporting that an arrest warrant had been issued for Presley on the basis of the assault on Byrd. Behl followed this by faxing a copy of the arrest warrant to Morrison. Morrison told Behl that Presley was scheduled to report to the Probation Department on the following day. On May 26, 1993, when Presley reported to the probation department, he was handcuffed by Morrison and detained for several hours until the arrival of Philadelphia police officers, who then formally arrested him.

On June 24, 1993, after a hearing and finding that Presley had failed to abide by the conditions of his release, the court revoked his parole and sentenced him to 2-½ to 5 years imprisonment. This sentence was affirmed on appeal by the Pennsylvania Superior Court. Presley did not seek a petition for allocatur to the Pennsylvania Supreme Court. However, he filed a petition under the Post Conviction Relief Act that was denied by the Court of Common Pleas. An

appeal to the Pennsylvania Superior Court of that denial is now pending.

Presley now brings this action, claiming that Morrison arrested him "acting on an unsupported accusation by plaintiff's ex-girlfriend and without any investigation ... although no criminal charges were filed against plaintiff...." Presley further alleges that he had complied with the conditions of his parole and was not in violation at the time of his arrest.

## DISCUSSION:

### I. Cruel and Unusual Punishment Claim

 To make out a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must show that punishment has been imposed which included "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion...." *Ingraham v. Wright*, 430 U.S. 651, 658, 97 S.Ct. 1401, 1405, 51 L.Ed.2d 711 (1977). Not only has plaintiff failed to demonstrate that any of these elements were present, he has failed to allege that Morrison punished him at all. He has alleged only that: (a) Morrison arrested him without probable cause; (b) his incarceration subjected him to overcrowded prison conditions and a hostile environment; and (c) his probation was revoked and he was resentenced to two to five years. Therefore, as to punishment, no Eighth Amendment claim lies against Morrison.

 With regard to his arrest, Presley does not have an Eighth Amendment cruel and unusual punishment claim. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham*, at 671, n. 40, 97 S.Ct. at 1412, n. 40; *Graham v. Connor*, 490 U.S. 386, 398, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989). Presley has failed to explain what connection Morrison has to either the conditions of his incarceration or the revocation of his probation and resentencing. Morrison, a probation officer, has had no control over either.

For these reasons, I will grant Morrison's summary judgment motion with regard to Presley's Eighth Amendment claim.

### II. Due Process Claim

 Plaintiff also alleges that his due process rights have been violated, again pointing to the arrest, the overcrowded prison conditions, and his sentence. This claim must be dismissed with regard to the prison conditions and his sentencing for the same reasons, stated immediately above, as must his Eighth Amendment claim.

With regard to his arrest, his claim is one more properly characterized as invoking the protections of the Fourth Amendment than those of the due process clause of the Fourteenth Amendment. The Fourth Amendment specifically guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (referring to the use of excessive force in an arrest). Therefore, I will grant Morrison's summary judgment motion with regard to the Fourteenth Amendment due process claim.

### III. Unlawful Arrest Claim

 Presley asserts a claim for unlawful arrest under the Fourth Amendment. He alleges the following facts in support of his contention that his arrest by Morrison was unlawful: [1]

1. Morrison "act[ed] on unsupported accusation by plaintiff's ex-girlfriend and without any investigation arrested plaintiff."

2. Morrison falsely arrested/imprisoned plaintiff and turned him over to the police "pursuant to a warrant whose validity has

---

1. These allegations are not laid out *in toto* in any one of Presley's submissions. They are collected and combined from his complaint, his response

to Morrison's motion for summary judgment, his responses to Morrison's request for admissions, and his responses to Morrison's interrogatories.

never been established." Morrison "knew or should have known that a warrant is invalid without supporting affidavit of probable cause." Morrison executed a "false arrest and false imprisonment ... pursuant to an arrest warrant that he knew or should have known was suspect of invalidity as no supporting affidavit of probable cause accompanied it."

3. Morrison arrested Presley "although no charges were filed against plaintiff, and plaintiff complied with conditions of his probation and was not in violation of his probation at the time of the defendant's unwarranted and arbitrary actions."

4. Morrison was not Presley's probation officer at the time of the arrest.

5. "Defendant was knowledgeable [sic] of false charges that was [sic] filed against plaintiff.

There are three pieces of evidence which Morrison received which led him to believe that Presley had violated his parole, and which he therefore relied upon for the arrest: (1) the telephone call from Byrd accusing Presley of attacking her; (2) the telephone call from Detective Behl the day before the arrest in which Morrison was told that an arrest warrant had been issued for Presley because of an alleged attack on Byrd; and (3) the copy of that arrest warrant faxed to him by Detective Behl. Presley does not dispute the receipt of any of these by Morrison. Rather, he contends that Morrison unreasonably relied on these pieces of evidence in arresting him, and that Morrison therefore lacked probable cause.

 The Fourth Amendment prohibits a law officer from arresting a citizen except upon probable cause. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169, 92 S.Ct. 839, 847, 31 L.Ed.2d 110 (1972); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995). Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Orsatti*, at 483; *Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1469 (E.D.Pa.1994); *Huffaker v. Bucks County District Attorney's Office*, 758

F.Supp. 287, 290–91 (E.D.Pa.1991). Furthermore, "law enforcement authorities are permitted and expected to draw reasonable inferences based upon their knowledge and experience." *Huffaker*, at 291; *Kis*, at 1469.

At the time of Presley's arrest, Morrison was employed as a probation officer by the Philadelphia Adult Probation Department. Presley was under the supervision of that Department pursuant to the terms of his parole granted on January 13, 1996. Under Pennsylvania law, "[p]robation officers ... appointed by any court of record of this Commonwealth ... shall have police powers and authority throughout the Commonwealth to arrest with or without warrant, writ, rule or process, any person on probation ... or parole under the supervision of said court ... for any ... violation of his probation ... or parole." 61 P.S. § 309.1. Therefore, since Morrison was a probation officer and Presley a probationer, Morrison had authority to arrest Presley if he had probable cause, i.e., if the facts and circumstances within his knowledge were sufficient to warrant a reasonable person to believe that Presley had violated his parole.

According to Presley, Morrison lacked probable cause to arrest him because (1) he relied on the accusation of Mary Byrd which was "unsupported," and he did not further investigate the accusation, and (2) he relied on the arrest warrant that he "knew or should have known was suspect of invalidity as no supporting affidavit of probable cause accompanied it." *Plaintiff's Response to Defendant's Motion for Summary Judgment*, at 4.

However, under the standard of law enunciated above, and in light of the phone call from Byrd, the phone call from Detective Behl, and the faxed arrest warrant, I find that, under the undisputed facts, Morrison had reason to believe that Presley had violated his probation, and Presley's basis for claiming that there is no probable cause is insufficient as a matter of law. Presley's main contention seems to be that the validity of the warrant was suspect because it was not accompanied by a supporting affidavit of

probable cause.[2] Insofar as Presley is implying that an affidavit of probable cause must be attached to/physically accompany an arrest warrant in order for an arrest to be made, no such requirement exists: the affidavit must simply be submitted to the neutral magistrate who issues the warrant. In any event, as a probation officer, Morrison did not need an arrest warrant at all to arrest Presley: Morrison had the authority to arrest Presley as long as he believed that Presley had violated his parole. 61 P.S. 309.1. The arrest warrant may have furnished Morrison with this belief, and, particularly along with the phone calls from both Detective Behl and Mary Byrd, was sufficient to do so. *See Griffin v. Leonard,* 821 F.2d 1124, 1126 (5th Cir.1987) ("probation officers may initiate review of alleged wrongdoing on the basis of hearsay reports from reliable sources."); *See also Capone v. Marinelli,* 868 F.2d 102, 105–06 (3d Cir.1989) (police officer may reasonably rely on police bulletin of another police department). I find nothing to support Presley's contention that an arrest warrant must be accompanied by a supporting affidavit of probable cause in order to avoid having its validity suspect, or that an arrest warrant standing alone is insufficient to establish probable cause to arrest a probationer.

Presley also incorrectly asserts that Morrison must have independently investigated Mary Byrd's accusations before he could determine that there was probable cause to arrest Presley. It was reasonable for Morrison to rely on the statements of Byrd, whom Morrison knew Presley had previously harassed and who had been made the subject of a specific condition of Presley's parole. *See Griffin,* at 1126. This reliance was particularly reasonable when Byrd's accusation was bolstered by the phone call from Detective Behl and the issuance of an arrest warrant for the attack. Morrison did not need to "independently investigate" Byrd's accusations in order to reasonably determine that

probable cause to arrest Presley existed. *See Griffin; Capone.*

Presley further asserts that his rights were violated because he was arrested "although no charges were filed against plaintiff, and plaintiff complied with conditions of his probation and was not in violation of his probation at the time of the defendant's unwarranted and arbitrary actions." Despite Presley's statement, it appears that criminal charges *had* in fact been filed against him at the time Morrison arrested him on May 26, 1995, as evidenced by the criminal complaint executed on May 21 by Officer Behl which has been submitted to this Court. In any event, the reasonability of Morrison's action in arresting Presley does not .depend upon charges actually having been filed against Presley at the time. As long as he reasonably believed that such charges had been filed or had other reason to believe Presley had violated his probation, Morrison had probable cause to arrest Presley for violating his probation.

■ Presley also contends that his arrest by Morrison was unlawful because Morrison was not the probation officer to whom Presley was assigned at the time of his arrest. Assuming, for the purpose of the summary judgment motion, that Morrison was not in fact Presley's probation officer at the time in question,[3] Presley has still failed to show that Morrison did not have authority to arrest him for probation violations. Under Pennsylvania law, "[p]robation officers ... have ... authority ... to arrest ... *any* person on probation, intermediate punishment or parole ... for any ... violation of his probation, intermediate punishment or parole." 61 P.S. § 309.1 (emphasis added). Therefore, even if Morrison was not Presley's probation officer, he was authorized to arrest Presley if he had probable cause to do so.

Finally, Presley asserts that "Defendant was knowledgeable [sic] of false charges that

---

**2.** Presley phrases this argument differently at different points in his submissions. To the extent that he argues that the warrant is invalid because no supporting affidavit *exists,* this does not appear to be true: the defense has submitted to the court a copy of the affidavit, signed by Detective

Behl on May 21, 1996, and has certified that a copy has been delivered to Presley.

**3.** As noted above, Morrison contests this, and Presley nowhere states who his assigned officer was if it was not Morrison.

was [sic] filed against plaintiff." However, Presley has failed to proffer any facts that support this claim: he has presented no evidence either that the charges were false or that Morrison knew them to be so. In fact, he fails to mention this claim at all beyond this bald statement in his response to Morrison's summary judgment motion. He has neither stated such a claim in his complaint itself nor submitted affidavits stating the factual bases of the claim. The party opposing a motion for summary judgment must go beyond the pleadings and establish the existence of a genuine issue for trial by setting forth, by affidavit or other evidence, specific facts which, if established at trial as true, would entitle him to prevail on his claim. He may not rely on mere allegations to defeat such a motion. *Lujan v. Defenders of Wildlife, et al.,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992); *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.,* 93 F.3d 1171, 1178 (3d Cir.1996); *In re TMI,* 89 F.3d 1106, 1116 (3d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3370 (U.S. Nov. 6, 1996) (No. 96–730).

▇ Even had Presley presented the necessary evidence of Morrison's subjective belief as to Presley's innocence, Presley's claim must nevertheless fail on qualified immunity grounds. Parole and probation officials, like police officers, are entitled to qualified immunity for their non-adjudicatory, i.e. discretionary, activities. *Thompson v. Burke,* 556 F.2d 231, 236–38 (3d Cir.1977); *Patterson v. Bd. of Probation and Parole,* 851 F.Supp. 194 (E.D.Pa.1994). Therefore Morrison, a probation officer acting in his capacity as such, is entitled to a defense of qualified immunity, which he has asserted.

Under the protection of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). That is, "whether an official protected by qualified immunity may be held personally liable for

an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), *citing Harlow,* at 818–19, 102 S.Ct. at 2738–39.

▇ The issue of an official's intent had been considered by some courts a factual question which made inappropriate a grant of summary judgment. *Harlow,* at 816, 102 S.Ct. at 2737. However, the previously recognized "subjective" aspect of qualified immunity, whereby such immunity is not available if the official asserting the defense "took action with the malicious intention to cause a deprivation of constitutional rights or other injury," *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), was abandoned by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. at 816, 102 S.Ct. at 2737. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable [arrest]; nor will an officer's good intentions make an objectively unreasonable [arrest] constitutional." *Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir.1992); *See also Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

The Court therefore came to the conclusion in *Harlow* that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow,* at 817–18, 102 S.Ct. at 2738. Thus, Presley's allegations that Morrison knew the charges to be false or the arrest warrant to be invalid despite their apparent validity do not preclude summary judgment.

In conclusion, the facts, even when looked at in the light most favorable to Presley, were "sufficient to permit a prudent person of reasonable caution to believe" that Presley had violated his probation. *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995); *Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1469 (E.D.Pa.1994); *Huffaker v. Bucks County District Attorney's Office,* 758 F.Supp. 287, 290–91 (E.D.Pa.1991). Therefore, Morrison had probable cause to

arrest Presley. *Id.* Furthermore, under *Harlow,* Morrison is protected by qualified immunity from any allegation by Presley that he possessed malicious intent in arresting him. 457 U.S. at 816, 102 S.Ct. at 2737. Therefore, even when looked at in the most favorable light, there is no possible set of facts under which Presley's allegations could establish a violation of his Fourth Amendment right to be free from unreasonable seizure of his person. For this reason, I will grant Morrison's summary judgment motion.

While I base my grant of summary judgment on the reasons stated above, I note that Presley's Fourth Amendment claim also warrants dismissal on other grounds: Presley is collaterally estopped from relitigating the issue of whether he violated probation. That issue has previously been decided by the Court of Common Pleas in his violation of probation hearing and affirmed by the Superior Court.

As discussed above, a probation officer may arrest any probationer who has violated the terms of his probation or parole. 61 P.S. § 309.1. Therefore, to sustain his present claim that Morrison arrested him unlawfully, Presley must show that he did not violate the terms of his probation.

When Presley was granted parole and probation on January 12, 1993, the court explicitly conditioned the grant on three things: (1) Presley's maintaining employment; (2) Presley's pursuing and obtaining his G.E.D.; and (3) Presley's leaving Mary Byrd alone. After the arrest in question, Presley was given a hearing on June 24, 1993 to determine whether he had violated his probation.[4] There the court specifically found that Presley "struck Ms. Byrd with his fist, despite the court's clear prior instructions regarding physical contact with the victim. At this point, it was starkly evident that this defendant has never complied with a single condition of his probation and clearly has no intention of benefitting from his supervision by the court. His conduct flagrantly violated the conditions of his probation...." *Commonwealth v. Presley,* No. 2470, Oct. Term,

1989 at 5 (C.C.P.Phila. Mar. 16, 1994) (citation omitted). On appeal to the Superior Court, that court, in affirming the decision of the Court of Common Pleas, found that, "[a]s the ultimate judge of witness' credibility, the sentencing judge found the complainant's testimony credible and that of the appellant incredible." *Commonwealth v. Presley,* 439 Pa.Super. 671, 653 A.2d 1303 (1994) (per curiam memorandum opinion).

Thus, Presley seeks to relitigate in this court an issue that has previously been decided in one state court and affirmed in another. State court judgments can preclude the relitigation of an identical issue that arises in a subsequent federal civil rights action under § 1983. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding. 28 U.S.C. § 1738; *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Allen,* at 96, 101 S.Ct. at 415.

Under Pennsylvania law, an issue is precluded from subsequent relitigation if the following criteria are met: (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior action. *Gregory v. Chehi* 843 F.2d 111, 121 (3d Cir.1988) (quoting *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)). Since these criteria were all met in Presley's June 24, 1993 violation of probation hearing, Presley is collaterally estopped from relitigating the issue of whether he violated his probation in this court.

For the reasons stated above, I will grant Morrison's Motion for Summary Judgment and dismiss this action.

---

**4.** Under *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973), a probationer is entitled to both a hearing on whether there is probable cause to hold him or her on a probation violation and a final revocation hearing.

**1306**

*ORDER*

**AND NOW,** this 10th day of December, 1996, Defendant's Motion for Summary Judgment is **GRANTED,** and the Complaint is **DISMISSED.**