Oleg KIS, Plaintiff,

v.

COUNTY OF SCHUYLKILL, City of Pottsville, Joseph Muldowney, Joseph Murton, Ronald Griffiths, Frank P. Spleen, Dale Repp and David Kurtz, Defendants.

Civ. A. No. 93–CV–5750.

United States District Court, E.D. Pennsylvania.

Oct. 25, 1994.

Steven T. O'Neill and Sean P. Flynn, Philadelphia, PA, for plaintiff.

Frank L. Tamulonis, Jr., Pottsville, PA, for defendants County of Schuylkill, Griffiths and Kurtz.

Donald E. Wieand, Jr., Allentown, PA, for defendants City of Pottsville, Muldowny, Murton and Repp.

Hugh Hutchison, Philadelphia, PA, for defendant Spleen.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This 42 U.S.C. § 1983 action is brought by plaintiff, Oleg Kis, against local governments and local government officials in their official and individual capacities.[1] He filed this action on October 29, 1993, alleging violations of his civil rights in six separate counts.[2] The court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the court now are defendants' Motions for Summary Judgment, filed on August 1, 2, and 12, 1994.[3]

## I. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where the:

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

"The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting a necessary element of his case." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir.1989). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n. 3, 106 S.Ct. 2548, 2552 n. 3, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty*

---

1. The defendants are the County of Schuylkill, City of Pottsville, Joseph Murton (Pottsville Detective), Ronald Griffiths (Schuylkill County Deputy Sheriff), Frank P. Spleen (Pottsville Deputy Health Officer), Dale Repp (Chief of Police, Pottsville Police Department), David Kurtz (Warden, Schuylkill County Prison).

2. Count I, against Murton, Griffiths, Repp, and Muldowney, is a § 1983 claim alleging false arrest, failure to train and supervise, and failure to follow the laws of Pennsylvania and the U.S. Constitution. Count II, against Murton and Griffiths, is a state law claim of false arrest. Count III, against Spleen, Muldowney and the City of Pottsville, is a § 1983 claim alleging malicious prosecution, failure to train and supervise and

failure to follow the laws of Pennsylvania and Pottsville. Count IV, against Spleen, is a state law claim of malicious prosecution. Count V, against the County of Schuylkill and Kurtz, is a § 1983 claim alleging false imprisonment, failure to provide medical assistance, failure to allow access to a phone, failure to promptly process bail request, failure to supervise and train, and failure to follow the laws of Pennsylvania and the U.S. Constitution. Count VI, against Kurtz is a state law claim of false imprisonment.

3. All defendants except Deputy Health Officer Spleen have moved for summary judgment. Muldowney and the City of Pottsville have moved only for partial summary judgment because their liability is in part based on that of Spleen.

*Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## II. FACTUAL BACKGROUND

Discovery is closed in this matter, and the essentially undisputed facts can be summarized as follows.[4]

In September 1989, plaintiff, Oleg Kis, purchased the residence at 509 North Seventh Street in Pottsville at a tax sale. On or about November 13, 1990, the City of Pottsville, through its deputy health officer, Frank P. Spleen, sent a notice to plaintiff to clean up the weeds and debris surrounding his dwelling.[5] The notice, which was sent to 509 North Seventh Street by both regular and certified mail, incorrectly addressed the plaintiff as "Oley Kiss," rather than "Oleg Kis."[6] Mr. Kis, allegedly believing that the notices were not addressed to him, returned the notice sent by regular mail unopened and refused to accept the notice sent by certified mail.

On July 2, 1991, the City, through Spleen, once again sent a notice to Kis to clean up the areas surrounding his dwelling. Once again, the notice was sent by both regular and certified mail and was addressed to "Oley Kiss" at 509 North Seventh Street. Mr. Kis was apparently not in residence at the property at the time the notices arrived, so the certified notice was returned unclaimed. The notice sent by regular mail was also eventually returned unopened.[7]

On July 22, 1991, Spleen filed Citation No. 160844 with the office of District Justice Charles V. Moran.[8] The citation incorrectly named Mr. Kis as "Oley Kiss" and charged a sanitation offense—"failure to have property conform to sanitation rules for exterior of property." It included plaintiff's correct address at 509 North Seventh Street and listed penalties of $129.00.[9] The citation, along with Summons # 160844, was mailed to plaintiff's above address, but once again Kis returned unopened all mail addressed by the City to "Oley Kiss." On September 10, 1991, another copy of the citation was mailed to plaintiff's address. It was returned with the notation, "Return to Sender. Nobody by this name at this address." Because of his failure to respond to the two citations, District Justice Moran issued a warrant for plaintiff's arrest on September 23, 1991. The warrant once again identified Oleg Kis as "Oley Kiss" but listed his correct address. The warrant was forwarded to the Schuylkill County Sheriff's Department for service.

On the evening of Wednesday, October 30, 1991, defendants Detective Joseph Murton and Deputy Sheriff Ronald Griffiths served plaintiff with the arrest warrant at his home. Plaintiff protested the arrest and showed Murton and Griffiths identification that indicated that his name was spelled "Oleg Kis," not "Oley Kiss." Plaintiff was nevertheless arrested and transported to Justice Moran's

4. Any minor factual disputes have been resolved in favor of the plaintiff.

5. The notice specifically referred to the following sections of the BOCA Property Maintenance Code (1990) which has been adopted by the City of Pottsville as its health and sanitation ordinance:
PM–301–.1 SANITATION: All exterior property and premises shall be maintained clean, safe, sanitary and free from any accumulation of rubbish or garbage.
PM–301–.4 WEEDS: All premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches (254 mm.). All noxious odors shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.
*See* Kis Exhibit B1, Plaintiff's Brief in Opposition to County Defendants' Motion for Summary Judgment.

6. It appears that the spelling of the name "Oley Kiss" was given to Spleen by defendant Joseph Murton, Mr. Kis's next door neighbor.

7. On several occasions soon after, defendant Spleen claims to have posted notices of the violation around the plaintiff's property. *See* Deposition of Frank Spleen.

8. It was city practice to file citations in the district justice's office. *See* Plaintiff's Brief in Opposition to County Defendants' Motion for Summary Judgment at 2.

9. The citation also stated: "Your response is needed within 10 days or a warrant will be issued for your arrest and additional costs will be added." *See* Affidavit of Charles V. Moran, Exhibit A.

courtroom.[10] Justice Moran showed the plaintiff the underlying citation and asked plaintiff to enter a plea. Plaintiff responded that his name was not "Oley Kiss" but was "Oleg Kis," stated that he had never received the citation, and demanded to speak to an attorney. Justice Moran allegedly told plaintiff that he was not a lawyer referral service and directed plaintiff to either enter a plea of guilty or not guilty and post bond, or face incarceration. Plaintiff replied, "I guess you'll have to take me to prison." Justice Moran ordered Mr. Kis incarcerated and issued a commitment order to the Schuylkill County Prison.[11]

Pursuant to the commitment order, Griffiths and Murton transported Mr. Kis to the Schuylkill County Prison. Upon arriving at the prison facility, plaintiff informed prison officials that he wished to speak to an attorney.[12] He was given the opportunity to make a phone call, told he would meet with a prison counselor, and placed in isolation for two days.[13] Mr. Kis had $838 dollars on his person when he was arrested. While in isolation, Mr. Kis claims that he was the subject of an unwanted sexual advance from another inmate and that the prison guard took no action in this regard. On Thursday, October 31, 1991, Mr. Kis met with the prison counselor and informed him that he wished to post bail.[14] He was directed to make a written request to deduct $129 from his funds for that purpose. Mr. Kis claims to have made such a written request on both the afternoon of Thursday, October 31, and Friday, November 1.[15] *See* Deposition of Oley Kis at 117. Mr. Kis also claims that he was denied medical attention[16] and use of the phone

---

10. Murton was able to identify Mr. Kis as the one toward whom the arrest warrant was directed since he was Mr. Kis's next door neighbor at the time and had met Mr. Kis on several occasions.

11. This commitment order was issued *sua sponte* in lieu of bail. *See* Affidavit of Charles V. Moran at ¶ 9.

12. It is routine procedure at the Schuylkill County Prison to give incoming prisoners a copy of the Resident Rules and Regulations. The relevant portions that make reference to phone calls and attorneys are as follows:
 * * * * * *
 **2. Telephone**
 **A. Admission**—You may make calls for bail and attorney, and family notification when interviewed by Treatment staff. Bail calls prior to this contact may be made with permission of Supervisor. All long distance calls are made "collect."
 **B. Regular Status**—Upon release into regular population, you will be eligible for participation in the Inmate Collect Call System available in all dayroom areas. Any abuse of phone or use of abusive language will result in loss of phone privileges. This privilege is revoked automatically if confined for disciplinary infractions. Hours are posted.
 **C. Emergency Calls**—Permission for special phone calls must be made by the Supervisor, Deputy Warden or Warden only!! These are for only the most urgent circumstances.
 * * * * * *
 **3. Attorneys**
 **A.** You may contact the attorney of your choice.
 **B.** When the attorney visits the Prison you will be entitled to confer in private. Those hours are Monday–Friday, 8:00 AM–4:00 PM.

 **C.** You may request the services of the Public Defenders Office.
 * * * * * *

13. A 48–hour isolation before release into the general population is a routine procedure at the Schuylkill County Prison. The relevant portion of the Procedural Manual states the following:
 *LOCK–UP STATUS*
 1. *Administrative*
 Any individual committed to the Schuylkill County Prison will be placed in a 48–hour lock-up status until an orientation is done with him by the counselor, and he is medically screened.
 While in this status, prior to his release in population, he will be granted only the following:
 A. Personal phone call for bail or emergency.
 B. Shower afforded every other day.
 *See* Affidavit of David J. Kurtz, Exhibit C.

14. At this point, Mr. Kis apparently did not ask the prison counselor how to go about obtaining an attorney.

15. The only written request for bail by plaintiff in the possession of the Schuylkill County Prison is dated November 1, 1991. *See* Deposition of David Kurtz at 61–62.

16. Mr. Kis states that he suffers from chronic fatigue syndrome. *See* Plaintiff's Brief in Opposition to County Defendants' Motion for Summary Judgment at 25–26. He alleges that he requested and was denied both a medical examination and a mental health examination. *Id.*

during his two day isolation, despite requests for both. He further alleges that he was not given access to an attorney during his period of isolation. On Friday, November 1, Mr. Kis told prison officials that he was going to begin a hunger strike unless his demands were met.[17]

Two days after his arrest, on the evening of Friday, November 1, he was taken from isolation and placed with the general population. As per prison policy, he was allowed to make phone calls after being placed with the general population and made several calls on that Friday, Saturday and Sunday.[18] His bail request was processed on Monday, November 4, 1991, and he was released on that date at approximately 12:30 p.m.

The trial on the sanitation charge was scheduled for November 27, 1991. On November 7, Mr. Kis filed a motion to change the venue of the trial to another magisterial district. The motion was granted, and the trial was held on December 23, 1991, in front of District Justice James R. Ferrier, of Magisterial District No. 21–3–03. On January 16, 1992, Justice Ferrier issued a decision dismissing the citation against Mr. Kis because he had been incorrectly identified as "Oley Kiss" on the citation. On January 22, 1992, Spleen filed another citation alleging the same violation as the dismissed citation and this time naming "Oleg Kis." It was issued on January 30, 1992, but was withdrawn shortly thereafter.

17. Mr. Kis alleges that the basis for his refusal to take food was fivefold: 1) his bail requests were being ignored; 2) he was not allowed to see an attorney; 3) his request to have the humane society take custody of his newborn kittens had not been addressed; 4) he had not been allowed to make any phone calls; 5) his request for information on the status of his incarceration had not been answered. See Plaintiff's Brief in Opposition to County Defendants' Motion for Summary Judgment at 5.

18. Mr. Kis made no phone calls to an attorney at this point although he had access to the phone facilities.

19. Plaintiff's claims under the Fifth Amendment are not relevant to these motions. First, since defendant Spleen has not moved for summary judgment, plaintiff's malicious prosecution claim will not be discussed. See Albright v. Oliver, (J.

## III. DISCUSSION

### (A) *Actions Under 42 U.S.C. § 1983*

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right or privilege secured by the Constitution or laws of the United States committed by a person acting under color of state law. See *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir. 1993). The plaintiff raises his claims under the Fourth, Fifth,[19] Sixth and Fourteenth Amendments.[20] No party disputes that all of the defendants are state actors. Therefore, the resolution of the motion for summary judgment rests on whether the complaint, answers, depositions and affidavits show that there is a genuine issue of material fact as to whether any of the defendants deprived plaintiff of his constitutional rights.

 Plaintiff has brought claims against the individual defendants in both their official and individual capacities. Individual capacity suits seek to impose personal liability upon a government official; damages are recoverable from the official's personal assets. See *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). To the extent that plaintiff is suing the individual defendants in their official capacities, his claims are the equivalent of claims against the municipalities themselves. *Will v. Mich-*

Ginsberg concurring) —— U.S. ——, —— n. 1, 114 S.Ct. 807, 815 n. 1, 127 L.Ed.2d 114 n. 1 (1994) (malicious prosecution claim under § 1983 is the territory of the Fifth Amendment). Second, since plaintiff makes no allegations against any federal actors, we hold that any due process claims he may be alleging will be sufficiently represented by the Fourteenth Amendment.

20. Plaintiff also makes some reference to the Eighth Amendment, but it is beyond dispute that the Eighth Amendment does not apply to pretrial detainees, such as plaintiff. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977).

*igan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, we will discuss claims against the individual defendants in their individual capacities separately, while reserving discussion of their liability in their official capacities until the liability of the respective municipalities is discussed.

**(B)** *Detective Murton and Deputy Sheriff Griffiths*

■ In Count I, plaintiff alleges that Detective Murton and Deputy Sheriff Griffiths violated his Constitutional rights under 42 U.S.C. § 1983 by falsely arresting him.[21] The central issue in determining liability in a § 1983 action based on a claim of false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir. 1988). Whether the person actually committed the charged offense is irrelevant, *id.,* as is the outcome of the prosecution of the state court charges. *See Roa v. City of Bethlehem,* 782 F.Supp. 1008, 1015 (E.D.Pa.1991).

■ Probable cause to arrest exists where the arresting officer has knowledge of facts and circumstances sufficient to permit a prudent person of reasonable caution to believe that the person arrested has committed an offense. *Huffaker v. Bucks County District Attorney's Office,* 758 F.Supp. 287, 290–91 (E.D.Pa.1991). Furthermore, "law enforcement authorities are permitted and expected to draw reasonable inferences based upon their knowledge and experience." *Id.* at 291 (discussing *U.S. v. Filiberto,* 712 F.Supp. 482, 485 (E.D.Pa.1989)).

■ It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment. *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *Graham v. Connor,* 490 U.S. at 389,

109 S.Ct. at 1868. Furthermore, an officer making an arrest on the basis of such a facially valid warrant is under no duty "to investigate independently every claim of innocence, whether the claim is based on mistaken identity," or otherwise. *Baker,* 443 U.S. at 144–45, 99 S.Ct. at 2694–95. Law enforcement officers who arrest solely on the basis of such a warrant are immune from suits alleging a Constitutional violation. *Id.* at 143–144, 99 S.Ct. at 2694; *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871; *Druckenmiller v. United States,* 548 F.Supp. 193, 194–95 (E.D.Pa.1982) ("The law is clearly established that law enforcement officers who effect an arrest pursuant to a facially valid arrest warrant are immune from suit alleging a constitutional deprivation.").

The gravamen of plaintiff's claims against Detective Murton and Sheriff Griffiths, however, is that the arrest warrant as issued was not facially valid, and that he was thus falsely arrested pursuant to it. The basis for his claim is twofold. First, plaintiff alleges that the warrant is invalid because his name was spelled incorrectly. Second, plaintiff claims that any arrest for violation of a sanitation ordinance is invalid under the Pennsylvania Code and Rules of Criminal Procedure.

*(1) Misspelled Name*

■ The requirements for the execution of a valid arrest warrant are clear. The arrest warrant must contain "the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty." Fed.R.Crim.P. 4(c)(1). Only in this way can an arrest warrant meet the particularity requirements of the Fourth Amendment. Courts have long held that "John Doe" warrants are insufficiently particular to meet this standard. *United States v. Doe,* 703 F.2d 745, 747 (3d Cir.1983). Beyond that, however, a warrant that correctly names the person to be arrested generally satisfies the requirements of the Fourth Amendment and no other description

---

**21.** We note that the Supreme Court has expressed a preference that all cases arising under § 1983 that deal with the violation of a plaintiff's constitutional rights while he is under arrest be dealt with exclusively under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395,

109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Albright v. Oliver,* —— U.S. at ——, 114 S.Ct. at 809. Accordingly, we will treat plaintiff's claims against defendants Murton, Griffiths, Repp, Muldowney and the City of Pottsville as arising primarily under the Fourth Amendment.

of the arrestee is usually necessary in the warrant. *Powe v. Chicago*, 664 F.2d 639, 645 (7th Cir.1981); *Cooper v. City of Chester*, 810 F.Supp. 618, 621 (E.D.Pa.1992). On the other hand, a warrant that incorrectly names the person to be arrested will "usually be deemed insufficient to meet the fourth amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him." *Powe*, 664 F.2d at 645.

■ While we recognize the significance of the holdings above, we feel that far more relevant to the case before us is the Third Circuit holding that a mere technical error on the face of an arrest warrant will not automatically invalidate the warrant. *United States v. Carter*, 756 F.2d 310 (3d Cir.1985), *cert. denied* 478 U.S. 1009, 106 S.Ct. 3307, 92 L.Ed.2d 721 (1986). *See also United States v. Benavides*, 854 F.2d 701 (5th Cir.1988). In *Carter*, the defendant contended that an arrest warrant was invalid because the date of the offense was incorrectly stated as September 14, 1983, instead of September 7, 1983. The Third Circuit affirmed the ruling of the district court that such a mistake was a technical error and did not invalidate the otherwise valid warrant. The Third Circuit indicated that "[t]he true inquiry ... is ... whether there has been such a variance as to 'affect the substantial rights' of the accused." *Carter*, 756 F.2d at 313 (quoting *Cromer v. United States*, 142 F.2d 697 (D.C.Cir.1944)). The Court further held that, in the case of a technical error, it was necessary for the party alleging invalidity of the warrant to prove that "the misstatement was made intentionally or with reckless disregard for the truth." *Id.* (discussing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

■ Plaintiff claims that under *Powe*, because his name was misspelled, the arrest warrant issued for him was invalid. Plaintiff also alleges that he was wrongly arrested because even after he showed Detective Murton and Deputy Sheriff Griffiths identification indicating the correct spelling of his name, they nevertheless arrested him. It is true that the arrest warrant incorrectly spelled plaintiff's name as "Oley Kiss" instead of "Oleg Kis." However, the uniqueness of the name and the listing of plaintiff's correct address on the warrant indicated to Detective Murton and Deputy Sheriff Griffiths that the arrest warrant was intended for Mr. Kis and no one but Mr. Kis. Furthermore, Detective Murton was able to identify Mr. Kis at the scene as being the one to whom the warrant was directed since he was Mr. Kis's next door neighbor. Clearly, Detective Murton and Deputy Sheriff Griffiths had probable cause to believe, then, that they were arresting the correct person.

Significantly, Mr. Kis has never alleged with any seriousness that he was in fact not the person for whom the warrant was meant, and he admits that the address on the warrant is his own. We find it transparently disingenuous that the plaintiff repeatedly chose not to accept official mail from the City of Pottsville and the Office of the District Justice that was obviously directed to him and is now further seeking to exploit a minor misspelling into a hypertechnical claim that the arrest warrant is invalid.

■ Under the holding of *Carter*, we fail to see how this misspelling had any effect whatsoever on the "substantial rights" of Mr. Kis. *Carter*, 756 F.2d at 313. Mr. Kis intimates that he was given no notice of any wrongdoing on his part before he was arrested. The numerous notices that were sent to him by regular and certified mail from the City of Pottsville, and subsequently returned to the City by him, belie his claims that he had no indication that there was anything wrong. Moreover, Mr. Kis has never suggested that the misspelling was done intentionally or with "reckless disregard for the truth," *id.*, and it is clear from the evidence that it was not. Such a misspelling obviously is a minor technical error that has no bearing on the facial validity of the arrest warrant. To hold otherwise would make a mockery of the Fourth Amendment.

Plaintiff's reliance on *Powe* is misplaced. In *Powe*, the police arrested the wrong person three times on the same arrest warrant because they were uncertain of the name of the arrestee. The court held that where the authorities do not know or are uncertain of the name of the arrestee, the name used in

the warrant is arbitrary, and the warrant must give some other description of the intended arrestee sufficient to identify him. *Powe* is inapplicable to our situation because the court was dealing with a case of mistaken identity. Here, the authorities were certain of the name of the intended arrestee, they simply misspelled it. In fact, the *Powe* court itself distinguished its holding from the situation that is presently before us:

> A case may be hypothesized in which the authorities responsible for preparing the warrant have good reason to believe that the name on the warrant is the real name of the intended arrestee, and have no reason to suspect otherwise. Our holding is not addressed to such a case. In this case our holding is simply that where, as is alleged here, the authorities had reason to suspect that the name placed on the warrant was not the real name of the intended arrestee, then some other description of the intended arrestee, sufficient to identify him, must be included in the warrant.

*Powe,* 664 F.2d at 647. As we noted earlier, there obviously is a difference between misspelling a name on a warrant and identifying the wrong person altogether. The situation before us is the former. Accordingly, we hold that the misspelling of plaintiff's name has no bearing on the facial validity of the arrest warrant.

### (2) *Validity of Ordinance and Procedure for Arrest*

▮ Plaintiff's second attack on the facial validity of the arrest warrant has two elements. Plaintiff first contends that the ordinance under which he was cited is in violation of Pennsylvania enabling legislation which does not allow for imprisonment for such an offense. Second, he argues that the warrant itself was incorrectly issued because it was allegedly dispensed pursuant to a citation, not a summons as is required by the Pennsylvania Rules of Criminal Procedure.

These arguments, even if correct, would have no bearing on the facial validity of the warrant and the liability of Detective Murton and Deputy Sheriff Griffiths. Because law enforcement officers ordinarily have no duty to investigate the validity of the law underlying a facially valid arrest warrant, especially one that was issued *sua sponte* by a judge, the alleged invalidity of the ordinance under the Pennsylvania Code has no bearing on the facial validity of the warrant. *See generally Baker,* 443 U.S. at 143–44, 99 S.Ct. at 2694; *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871; *Druckenmiller,* 548 F.Supp. at 194–95.

Although we need not do so, since the underlying arguments the plaintiff puts forth are erroneous, we will briefly respond to them. Plaintiff claims first that the Third Class City Code, part of the statewide enabling legislation, does not allow a city to adopt ordinances which permit imprisonment for offenses such as the one for which plaintiff was cited.[22] He contends, therefore, that the 1990 BOCA Code adopted by the City of Pottsville is invalid because it allows for such imprisonment. We express no opinion at this time as to whether defendants are correct in their assertion that the statute cited by plaintiff has been superseded by a more recent statute which does allow for imprisonment upon the failure to pay fines and costs for violation of ordinances dealing with sanitation.[23] It is not necessary for us to make

---

**22.** Plaintiff cites 53 P.S. § 39131 as the basis of his claim. The full text of this section reads as follows:

> **§ 39131. Form of building ordinance, housing ordinance; passage; penalties;**
> The building ordinance, the housing ordinance, the fire prevention ordinance, the electrical ordinance and the plumbing ordinance may adopt any standard or nationally recognized building code, any standard or nationally recognized fire prevention code or any standard or nationally recognized electrical code, or any standard or nationally recognized plumbing code, or any variations or changes or parts thereof.... The building ordinance, the

housing ordinance, the fire prevention ordinance, the electrical ordinance, and the plumbing ordinance may provide proper fines and penalties not exceeding three hundred dollars for violations thereof....
As amended 1963, July 30, P.L. 354, § 1; 1971, July 29, P.L. 250, No. 61, § 3.

**23.** The relevant statute cited by defendants is 53 P.S. § 37403.60 which reads as follows:

> **§ 37403**
>
> \* \* \* \* \* \*
>
> **60. Local Self–Government.**—In addition to the powers and authority vested in each city by the provisions of this act, to make and adopt

this determination because plaintiff was not incarcerated because of his violation of the Pottsville 1990 BOCA Code.[24] He was arrested, in accordance with the Pennsylvania Rules of Criminal Procedure, because he failed to respond to the citation and summons that had twice been sent to him by certified mail.[25] District Justice Charles V. Moran properly issued a warrant for the plaintiff's arrest when the plaintiff failed to timely respond to the citation and summons that had been mailed to him. He was then incarcerated because he refused to enter a plea and post bail.

Plaintiff's second contention is that the arrest warrant was not validly issued under the Pennsylvania Rules of Criminal Procedure because an arrest warrant may only be issued pursuant to a summons, not a citation. Plaintiff is incorrect in his factual assertion that a summons was not issued in his name. On July 22, 1991, Spleen, after receiving no response to the several notices and citations sent to Kis, filed Citation No. 160844 with the office of District Justice Charles Moran. It was forwarded to plaintiff, along with Summons No. 160844, to his address by certified mail on July 24, 1991. *See* Affidavit of District Justice Charles V. Moran, Addendum of September 16, 1994 (hereinafter Moran Affidavit). The Citation clearly indicated that plaintiff was to respond within 10 days or a warrant for his arrest would be issued. Both the citation and the summons were returned to sender as unclaimed, notwithstanding notification on July 25, 1991 and July 30, 1991. *See* Moran Affidavit at 2. On September 10, 1991, another copy of the citation was sent to plaintiff's address. It also clearly indicated that if plaintiff did not respond within 10 days a warrant for his arrest would be issued. *See* Moran Affidavit, Exhibit C. This letter was returned to sender with the handwritten notation, "Return to sender. Nobody by this name at this address." *See* Moran Affidavit, Exhibit D. Because of his failure to respond to the above correspondence, a Warrant of Arrest was issued for "Oley Kiss at 509 N. 7th Street, Pottsville, PA, 17901" on September 23, 1991. *See* Moran Affidavit, Exhibit E. It was forwarded to the County Sheriff's Office for service. It is our opinion that the entire procedure

---

all such ordinances, bylaws, rules and regulations, not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city, and its trade, commerce and manufactures; and also all such ordinances, by-laws, rules and regulations as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; and the said ordinances, by-laws, rules and regulations to alter, modify, and repeal at pleasure; and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof, not exceeding $1000 for a violation of a building, housing, property maintenance, health, fire or public safety code or ordinance, and for water, air and noise pollution violations, and not exceeding $600 for a violation of any other ordinance, recoverable with costs, together with judgment of imprisonment, not exceeding 90 days, if the amount of said judgment and costs shall not be paid: ...

As Amended 1987, Dec. 3, P.L. 411, No. 85, § 1, effective in 60 days.

**24.** We also note that the Third Class City Code, 53 P.S. § 37005, expressly allows officers to make arrests for ordinance violations.

**25.** Rule 61 of the Pennsylvania Rules of Criminal Procedure provides the following upon the filing of a citation:

Upon the filing of the citation, the issuing authority shall issue a summons commanding the defendant to respond within 10 days of receipt of summons, unless the issuing authority has reasonable grounds to believe that the defendant will not obey a summons in which case an arrest warrant shall be issued. The summons shall be served as provided in these rules. A copy of the citation shall be served with the summons.

Rule 75 of the Pennsylvania Rules of Criminal Procedure, relating to the issuance of an arrest warrant, provides in part:

1. A warrant for the arrest of the defendant shall be issued when:

(a) the defendant fails to respond to a citation or summons that was served upon the defendant personally or by certified mail return receipt requested; or

(b) the citation or summons is returned undelivered; or

(c) the issuing authority has reasonable grounds to believe that the defendant will not obey a summons.

was conducted in accordance with the Pennsylvania Rules of Criminal Procedure.

We hold, therefore that the arrest warrant was facially valid and that Detective Murton and Deputy Sheriff Griffiths had probable cause to arrest Oleg Kis as the "Oley Kiss" named in the arrest warrant. Accordingly, Murton and Griffiths cannot be held liable for a Constitutional violation under § 1983 for the arrest of plaintiff.[26] Here plaintiff has provided no facts upon which the court could conclude that a genuine issue for trial exists. Therefore, we will grant Detective Murton's and Deputy Sheriff Griffith's Motions for Summary Judgment in their individual capacities.

### (C) Chief of Police Dale Repp and Mayor Joseph Muldowney

In Count I of his complaint, plaintiff claims that defendants Dale Repp and Joseph Muldowney failed to properly train and supervise Detective Murton and thus alleges a 42 U.S.C. § 1983 claim against them.[27] Mr. Kis does not allege that he had any contact at any time with either Chief Repp or Mayor Muldowney but seems to base his claim against them solely on the theories of supervisory liability and respondeat superior.[28]

It is well-settled that there is no respondeat superior liability in § 1983 actions. *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Generally, a claim against an employer of law enforcement personnel based solely on a theory of failure to train or supervise must fail if it is found that the police officers that the employer supervised had probable cause to arrest. *Valenti v. Sheeler*, 765 F.Supp. 227, 232 (E.D.Pa.1991) (Chief of police not liable for failure to train when police officers not found personally liable). As we noted above, an officer does not have a duty to independently investigate the underlying law in a facially valid bench warrant. It follows, then, that his supervisors cannot be held responsible for failing to train the police officer to do so.

Consequently, we hold that since Chief Repp's and Mayor Muldowney's liability is grounded in the liability of Detective Murton,

---

26. The defendants have raised the defense of qualified immunity. Since a finding of probable cause renders this defense moot, it is not necessary for us to discuss it fully. However, in the interest of creating a complete record, we will address it briefly. Generally, government officials performing discretionary functions are entitled to qualified immunity, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity applies when "conduct does not violate clearly established ... rights of which a reasonable person would have known."). The qualified immunity defense thus rests upon the objective legal reasonableness of the official's action in light of the legal rules that were clearly established at the time of the alleged violation. *See Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. Therefore, Murton and Griffiths are entitled to qualified immunity if a reasonable officer would have believed that probable cause existed to arrest plaintiff. *See id.* at 641, 107 S.Ct. at 3039. Because they acted pursuant to a facially valid warrant and reasonably identified Oleg Kis as being the "Oley Kiss" in the warrant, we find that a reasonable officer would believe that he had probable cause to arrest Mr. Kis.

27. We only discuss Mayor Muldowney's liability with regard to the claim against him in Count I of the complaint since he has moved only for partial summary judgment based on any liability he faces with regard to Detective Murton. We express no opinion at this time about the claim plaintiff states against Mayor Muldowney in Count III of his complaint.

28. The relevant portions of the complaint that deal with Chief Repp and Mayor Muldowney are as follows:

 \* \* \* \* \* \*

85. Defendants, Repp and Muldowney, acting with complete and deliberate indifference to Kis' rights caused him to be deprived of his constitutional rights, including those under the Fourth, Fifth, Sixth and Fourteenth Amendments by:

 (a) Failing to supervise properly the training and conduct of defendant Murton;

 (b) Failing to enforce the laws of the Commonwealth of Pennsylvania and the Constitution of the United States prohibiting arrest and pretrial detention of citizens accused of summary offenses; and

 (c) Allowing defendant Murton, who had a direct and personal interest in the subject matter of the proceeding, to execute the warrant.

 \* \* \* \* \* \*

and because we found that Detective Murton did not violate plaintiff's Constitutional rights, we must also find that Chief Repp and Mayor Muldowney have not violated plaintiff's Constitutional rights.

Furthermore, even if plaintiff had alleged a viable § 1983 claim against Detective Murton, he would not be able to sustain one against Chief Repp and Mayor Muldowney on the facts presently before us. To sustain a § 1983 claim against Repp and Muldowney, plaintiff would have to show some affirmative conduct by them that played a role in the discrimination. *See Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). This necessary involvement can be established either of two ways: "through allegations of personal direction or actual knowledge and acquiescence," or through proof of direct discrimination by the supervisor. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990); *Keenan v. City of Philadelphia,* 983 F.2d 459 (3d Cir.1992).

The Third Circuit, in *Sample v. Diecks,* 885 F.2d 1099 (3d Cir.1989), refined this standard by extending the Supreme Court's holding in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989),[29] beyond municipal entities to supervisory personnel. The Third Circuit held that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' ... has exhibited deliberate indifference to the plight of the person deprived." *Sample,* 885 F.2d at 1118. To hold a supervisory official liable, then, the plaintiff must: 1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference; and 2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury. *Id.* at 1118; *City of Canton,* 489 U.S. at 489, 109 S.Ct. at 1261.

Defendants' supervisory position over Detective Murton "is irrelevant for purposes of their individual liability." *Chudzik v. City of Wilmington,* 809 F.Supp. 1142, 1148 (D.Del. 1992) (discussing *Rode v. Dellarciprete,* 1195, 1208 (3d Cir.1988)).

Applying the above standards, we find that the plaintiff has not met the Third Circuit's specific criteria for imposing supervisory liability. As we noted earlier, plaintiff admits that at no time during this entire incident did he have any contact with either Repp or Muldowney. He therefore certainly cannot allege that either of them personally discriminated against him. On the contrary, the sole basis of his allegations against them appears to be that they should be held liable for failing to train Detective Murton properly with regard to the validity of arrest under the 1990 BOCA Code.[30] These allegations have absolutely no merit. As we noted above, plaintiff was not arrested pursuant to the 1990 BOCA Code but was arrested pursuant to the Pennsylvania Rules of Criminal Procedure when he failed to timely respond to a citation and summons. In this regard, all procedures were properly observed in the issuance of the citation, summons and subsequent arrest warrant. Furthermore, Detective Murton, acting pursuant to a facially valid warrant, was under no duty to familiarize himself with the underlying ordinances to which plaintiff repeatedly refers.

Moreover, even if Detective Murton had *not* been acting pursuant to a facially valid warrant, nowhere does plaintiff provide a factual basis demonstrating on even a cursory level that defendants Repp and Muldowney were involved in or acquiesced in Murton's alleged misconduct. He does not indicate in any of his pleadings how they failed to adequately train Detective Murton beyond the allegations that Murton was not versed in the 1990 BOCA Code. And he certainly does not indicate with any factual specificity what

---

**29.** In *City of Canton,* the Court held that the inadequacy of police training may serve as the basis for *Monell* liability. To recover under a failure to train theory, the plaintiff must demonstrate that, (1) the failure to train amounted to deliberate indifference to the rights of persons with whom the police came in contact; and (2) the municipality's policy actually caused a con-

stitutional injury. *City of Canton,* 489 U.S. at 389–90, 392, 109 S.Ct. at 1205–06, 1206.

**30.** As a police detective, Murton is not even charged with knowledge about the BOCA code. This is the purview of the Code Enforcement Office. *See* Deposition of Joseph Murton at 53.

actions Repp and Muldowney took that might detail a deliberate indifference on their part to the Constitutional rights of plaintiff. The record simply indicates that Detective Murton, on overtime duty, agreed to serve arrest warrants with Deputy Sheriff Griffiths. Among the warrants they served that evening was one for the arrest of "Oley Kiss," issued by the office of District Justice Moran. Pursuant to the warrant, Murton properly brought plaintiff to the courtroom of Justice Moran.

Here, even construing plaintiff's claim in its most favorable light, we see no facts, or even allegations, evincing a "deliberate indifference" on the part of Repp or Muldowney. Accordingly, we grant Dale Repp's Motion for Summary Judgment and Joseph Muldowney's partial Motion for Summary Judgment on the claims alleged against them in their individual capacities in Count I of plaintiff's complaint.

**(D) *City of Pottsville***

■■■ In this section we discuss the liability of the City of Pottsville based on the official capacity suits by plaintiff against defendants Detective Murton, Chief Repp, and Mayor Muldowney.[31] As we stated earlier, a suit against a municipal employee in his official capacity is the equivalent of a suit against the municipality itself. *See Will,* 491 U.S. at 58, 109 S.Ct. at 2304.

In *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), the Supreme Court held that a municipal entity cannot be held liable for failing to train or supervise an officer where there is no underlying constitutional violation by the individual officer. In *Heller,* police officers were accused of making an arrest with excessive force and without probable cause. The jury returned verdicts in favor of the officers but against the city. The Court reversed the verdict against the city because it was inconsistent, noting, "if a plaintiff has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573. *See also Williams v. Borough of West Chester,* 891 F.2d 458 (3d Cir.1989) (where a plaintiff's claims focus on harm caused by the actions of municipal employees, rather than harm directly traceable to a municipal policy, municipal liability claims must be dismissed where the individual officer is exonerated).

Recently the Third Circuit carefully distinguished the *Heller* holding from its decision which held that in certain instances a municipality can be held independently liable for violating a plaintiff's constitutional rights even if there is no individual liability on the part of the officer. In *Fagan v. City of Vineland,* 22 F.3d 1283 (3d Cir.1994), the Third Circuit held that in a § 1983 substantive due process claim arising out of a police pursuit, an underlying constitutional tort can still exist against the city, even if no individual officer violated the Constitution. *See id.* at 1292. The *Fagan* panel first distinguished the holding in *Heller* as one only arising under § 1983 for violations of the Fourth Amendment. Second, the panel noted that the liability of the city of Los Angeles in *Heller* was based on a theory of respondeat superior since they were sued "only because they were thought legally responsible for Bushey's actions." *Heller,* 475 U.S. at 799, 106 S.Ct. at 1573. The Court reasoned that "[o]nce the jury determined that the arrest

---

**31.** The only other reference to the City of Pottsville is in Count III of plaintiff's complaint which reads as follows:

> * * * * * *

> 95. Defendant, City of Pottsville, failed to train its municipal officials and police in the Rules of Criminal Procedure and in the proper enforcement of property maintenance ordinances.

> * * * * * *

We will only discuss the liability of the City of Pottsville vis-a-vis Murton, Repp and Muldowney since the remainder of the City's liability is grounded in the liability of Frank Spleen, a defendant who has not moved for summary judgment.

was lawful, there was no underlying constitutional violation for which the city or any other defendant could be held liable." *Fagan,* 22 F.3d at 1291. Unlike the plaintiff in *Heller,* the plaintiff in *Fagan* brought separate and independent constitutional claims against the officers and the city. The *Fagan* court held that these claims "are based on different theories and require proof of different actions and mental states," and thus a finding of municipal liability could not automatically hinge upon the liability of any one police officer.

Obviously, the standard enunciated by the Supreme Court in *Heller* is the one applicable to the case at bar. First, plaintiff alleges his violations of § 1983 against Detective Murton primarily under the Fourth Amendment. *See Albright v. Oliver,* — U.S. —, — — —, 114 S.Ct. 807, 810–814, 127 L.Ed.2d 114 (1994) (evincing a preference that all claims dealing with the arrest of a plaintiff be evaluated under the Fourth Amendment only). Second, plaintiff in this case bases his theory of municipal liability on respondeat superior, claiming only that the city failed "to train its municipal officials and police in the Rules of Criminal Procedure and in the proper enforcement of property maintenance ordinances." *See* Plaintiff's Complaint at ¶ 95. Plaintiff alleges no independent claims against the City of Pottsville. As we have already stated, Detective Murton had probable cause to arrest Mr. Kis and did so properly. Chief Repp and Mayor Muldowney were found not liable under a theory of supervisory liability. Consequently, we

find that, under *Heller,* the City of Pottsville is not liable to plaintiff for any Constitutional violation.[32] We therefore grant the City of Pottsville's Motion for partial Summary Judgment as well as grant summary judgment for defendants Murton, Repp and Muldowney in their official capacities.

**(E) *Warden David Kurtz***

In Count V, plaintiff alleges against Warden David Kurtz a § 1983 cause of action claiming false imprisonment.[33] Since Mr. Kis admits that at no time did he have any contact with Mr. Kurtz, we believe that the basis of his claim is again grounded in supervisory liability.

As we discussed above, even though the doctrine of respondeat superior is inapplicable to § 1983 claims, a failure to train and supervise claim may be alleged directly against a prison official. *Sample,* 885 F.2d at 1118. To prevail on such a claim a plaintiff must: 1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference; and 2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury. *Id.*

When offering proof of deliberate indifference, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Id.* Rather, the plaintiff must identify specifically what it is that the supervisor failed to do that evidences his deliberate indifference, for "only in the context of a specific defalcation can the

---

32. Even if the individual officials involved had been held liable (thus making summary judgment under *Heller* inappropriate), the record before us would compel us to grant summary judgment in any instance to the City of Pottsville. A municipality may be liable for failure to train its police officers when that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1204. Plaintiff has offered no proof of this practice by the City of Pottsville but has merely asserted bare allegations that the City failed to adequately train and supervise. We have previously held that mere conclusory allegations that the defendants failed to properly train are not enough to support a Constitutional claim. *Plasko v. City of Pottsville,* 852 F.Supp. 1258 (E.D.Pa.1994).

33. The portion of the complaint that is relevant to address Warden Kurtz's liability reads as follows:

\*　　\*　　\*　　\*　　\*　　\*

107. Defendant, Kurtz, further acted with complete and deliberate indifference to Kis' rights, including those under the Fifth, Sixth, Eighth and Fourteenth Amendments by:
(a) Failing to supervise properly the training and conduct of prison officials; and
(b) Failing to enforce the laws of the Commonwealth of Pennsylvania and Constitution of the United States regarding the rights of pretrial detainees, including those under 37 Pa.Code §§ 95.222(a)(1) and (a)(6), 95.223(3)(B) and (3)(D), 95.226(a) and 95.232(a)(1).

\*　　\*　　\*　　\*　　\*　　\*

court assess whether the official's conduct evidenced deliberate indifference." *Id.* Furthermore, plaintiff must usually point to the supervisor's deliberate indifference to a pattern of injuries. Although *Canton* indicates that a failure to prove such a pattern is not necessary fatal to a plaintiff's claim, the incident of harm in this instance must be so great and substantial that, "the risk and failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." *Id.*

Plaintiff alleges that Kurtz "acted with complete and deliberate indifference" to plaintiff's rights by failing to properly train and supervise prison officials as well as by failing to enforce the laws of the Commonwealth of Pennsylvania and the Constitution of the United States. *See* Complaint at ¶ 107. The specific instances of injury that plaintiff alleges are as follows:

(1) Pretrial detention for an indeterminate period of time for a purported summary offense of violating a property maintenance ordinance;

(2) The failure to make a determination of probable cause for Kis' extended pretrial detention;

(3) The failure to offer any medical evaluation or assistance during Kis' entire confinement;

(4) The failure to allow access to a phone from the beginning of Kis' confinement and continuing for over two days;

(5) The failure, under all the circumstances, to promptly transmit Kis' bail request to the proper authorities.

*See* Complaint at ¶ 104.

Assuming that these are the only allegations plaintiff makes with regard to his injuries,[34] we find that they do not even rise to the level of a Constitutional injury. We will briefly discuss the reasons why:

**34.** Plaintiff in his Reply to Defendants' Motions for Summary Judgment makes allegations regarding other conditions of confinement not previously mentioned in his Complaint. Because he

*(1) Pretrial Detention*

■ We reiterate once again that plaintiff was arrested for failure to timely respond to a summons and citation, not for violation of a city ordinance. Furthermore, he was incarcerated in lieu of bail after he refused to post bail pursuant to a facially valid commitment order by Justice Moran. Plaintiff suffered no Constitutional injury with regard to this allegation.

■ The due process rights of pretrial detainees were announced by the Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Bell,* the Supreme Court held that conditions of pretrial detention do not infringe upon a detainee's Fourteenth Amendment due process rights if those conditions do not amount to punishment of the detainee. *Id.* at 535, 99 S.Ct. at 1871. Restrictions on the liberty of pretrial detainees do not constitute punishment if the restrictions are rationally related to a legitimate nonpunitive government objective. *Id.* at 539, 99 S.Ct. at 1874. The *Bell* test for conditions of pretrial detention was applied in the Third Circuit in *Union County Jail Inmates v. Di Buono,* 713 F.2d 984, 992 (3d Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984).

Plaintiff alleges that he was detained in violation of his Constitutional rights. Applying the *Bell* test to plaintiff's pretrial detention, we hold that the detention of plaintiff, pursuant to a facially valid commitment order, did not violate his due process rights under the Fourteenth Amendment. District Justice Moran ordered plaintiff's incarceration as part of a set of penalties designed to enforce court orders. The penalties are rationally related to the legitimate nonpunitive objective of enforcement of court orders. This enforcement procedure was carried out consistently with plaintiff's due process rights.

*(2) Failure to Make a Determination of Probable Cause*

■ Probable cause to arrest plaintiff was established by Detective Murton's identi-

has never moved to amend his complaint to add these allegations, we will not address them at this time.

fication of plaintiff as Oleg Kis, and his presence at the cited property. Furthermore, at his appearance before Justice Moran, plaintiff identified himself as Oleg Kis and denied any receipt of a summons or citation. Plaintiff's subsequent pretrial detention was ordered pursuant to plaintiff's failure to post bond. We find no authority, and plaintiff cites none, that indicate that plaintiff was entitled to a probable cause determination upon arriving at the prison facility. Consequently, we find that plaintiff suffered no Constitutional injury with regard to this allegation.

### (3) *Failure to Offer Medical Evaluation or Assistance*

■■■ The standard for medical care under the Eighth Amendment was articulated by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under *Estelle*, the plaintiff must establish a deliberate indifference on the part of municipal officials to a serious medical need in order to maintain an action for violation of his Constitutional rights. *Id.* at 104, 97 S.Ct. at 291.

In the Third Circuit, the *Estelle* test was applied to pretrial detainees in *Boring v. Kozakiewicz*, 833 F.2d 468, 472–73 (3d Cir. 1987), *cert. denied* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). The court in *Boring* held that prisoners must evidence a serious illness or injury to satisfy the *Estelle* test, and that injuries plaintiffs in that case suffered did not rise to such a level. *Id.* at 473–74. Plaintiffs in *Boring* presented conditions including nerve damage to an arm, a scalp condition, and an injured knee, among other ailments. *Id.*

Here, although plaintiff suffers from chronic fatigue syndrome, he makes no allegations that he was in actual need of medical attention during his incarceration. He points to no instances, beyond the fact that he had to rest on his way home and that he had to take a nap when he arrived home, in which his health was impaired in any way. Plaintiff has not established a serious medical need under *Estelle* and we thus find that he has not suffered a Constitutional injury with regard to this claim.

### (4) *Failure to Allow Access to Phone During Isolation*

■■■ Plaintiff alleges that he was denied the use of the phone during his two days of isolation. The prison policy is to allow detainees to make a phone call upon arriving at the prison facility, allow them no phone calls during the 48–hour isolation period, and then allow general usage of the phone within reason after release into the prison population. *See supra* note 10. This court has already held that this restriction, imposed on all inmates, is a "reasonable response to legitimate prison concerns," and does not rise to the level of a Constitutional violation. *Newkirk v. Sheers*, 834 F.Supp. 772 (E.D.Pa. 1993). We see no reason to hold otherwise in this instance and we find that plaintiff has not alleged a Constitutional injury.

### (5) *Failure to Promptly Transmit Bail Request*

■■■ Plaintiff alleges that his Fourteenth Amendment due process rights were violated by a failure to promptly transmit his bail request.

Assuming plaintiff did file a written bail request on Thursday, October 31, 1991, and was not released until midday on Monday, November 4, 1991, we must determine whether this delay rises to the level of a Constitutional violation. We hold that it does not. First, plaintiff would have to allege that prison officials knew of his request on Thursday and ignored that request in deliberate indifference to plaintiff's Constitutional rights. *See Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that the "deliberate indifference" standard of *Estelle v. Gamble* applies to prisoner challenges of nonmedical conditions of confinement); *Roa v. City of Bethlehem*, 782 F.Supp. 1008, 1015 (E.D.Pa.1991) (in plaintiff's challenge to his wrongful pretrial detention for over thirty days, court held that plaintiff would have to allege that officials acted intentionally, recklessly or in gross negligence to support a Constitutional violation). Second, even if plaintiff alleged knowledge and deliberate indifference on the part of prison officials, a delay of a few days

during pre-trial detention does not rise to the level of a Constitutional violation. *Hodge v. Ruperto,* 739 F.Supp. 873, 876 (S.D.N.Y.1990) (2½ day detention does not violate constitutional rights, but deprivation of food and water allowed inference of deliberate indifference). Consequently, plaintiff has not alleged a Constitutional violation in this regard.

Furthermore, even assuming that plaintiff had alleged a constitutional injury through any of these claims, he has certainly not offered evidence to indicate that Warden Kurtz had any knowledge of these occurrences. The record indicates that Warden Kurtz was away from the prison on Thursday, October 31, and Friday, November 1, 1991, at labor negotiations. *See* Affidavit of David Kurtz at 1–2. Kis admits that he never had any contact with Warden Kurtz and never attempted to contact him while he was incarcerated. *See* Deposition of Oleg Kis at 167–68. The fact that plaintiff complained to prison officials under the direct supervision of Kurtz is not enough. *Payton v. Vaughn,* 798 F.Supp. 258 at 260 (E.D.Pa. 1992). Moreover, Mr. Kis has certainly not offered proof of a pattern of such occurrences to which Warden Kurtz could even evidence a deliberate indifference.

Consequently, seeing no proof of a violation of plaintiff's Constitutional rights, let alone proof of deliberate indifference, we grant defendant David Kurtz's Motion for Summary Judgment in his individual capacity.

### (F) *Schuylkill County*

■ Local governments may not be held liable under § 1983 for the actions of their employees on a theory of respondeat superior, but they may be held to answer for Constitutional violations caused by official policy or custom of the municipality. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The Supreme Court defined such a municipal policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690, 98 S.Ct. at 2036. A municipal custom for § 1983 purposes is "such practices of state officials ... [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691, 98 S.Ct. at 2036 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

■ The officials who can bind the municipality thus are those "whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. Which official or officials has final policymaking authority for a municipality on a particular issue is a question of state law, to be decided by the judge by referring to state and local law, as well as custom or usage having the force of law. *Jett v. Dallas Independent School District,* 491 U.S. 701, 736–38, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). The Supreme Court has clearly stated that only those municipal officers and employees who have final policymaking authority can by their actions subject their municipal employers to § 1983 liability. *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298.

■ Plaintiff states as the basis of his claim against Schuylkill County the alleged wrongful actions of Warden Kurtz. However, this court explicitly found in *Newkirk v. Sheers,* 834 F.Supp. at 786, that Warden Kurtz did not possess final policymaking authority under Pennsylvania law, even if his decisions are sometimes final in practice. We found that Schuylkill County employs both County Commissioners and a County Prison Board as official policymaking bodies within the County, and that "[t]he existence of these bodies as overseers of the County prison system undermines the contention that the power to make final policy can be removed from them." *Id.* Under the dictate of *Pembaur,* then, we find that since Warden Kurtz was not the final policymaking authority, the County of Schuylkill cannot be held liable for any alleged Constitutional violations against the plaintiff. We accordingly grant summary judgment both to the County

**1480**

of Schuylkill and Warden Kurtz in his official capacity. *See Will,* 491 U.S. at 58, 109 S.Ct. at 2304.[35]

### (G) *Pendent State Law Claims*

 Because summary judgment has been granted in full for defendants Murton, Griffiths, and Kurtz, there is no need to address the merits of the plaintiff's state law claims against these defendants. Since all federal claims against these three defendants have been dismissed, the decision to entertain or dismiss the pendent state law claims is within our discretion.[36] Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

 In Count II, plaintiff alleges the state law claim of false arrest against Griffiths and Murton. In Count VI, he alleges the state law claim of false imprisonment against Kurtz. These state claims are related to the dismissed federal claims and share a "common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. Retention of them would involve the presentation at trial of issues and facts that are wholly separate from the federal claim we retain jurisdiction over,[37] and would not be in the interest of judicial economy and fairness to the litigants. In addition, the potential for jury confusion in such a situation is great. *See La Plant v. Frazier,* 564 F.Supp. 1095 (E.D.Pa.1983) (state law claims against officers dismissed when related § 1983 claims against them dismissed; court retained jurisdiction over § 1983 claim over another officer and related state claim); *Allentown Racquetball & Health Club, Inc. v. Building and Construction Trades Council of Lehigh and Northampton Counties,* 525 F.Supp. 156 (E.D.Pa. 1981) (court granted partial summary judg-

ment for defendants on newspaper advertising issue and dismissed plaintiff's state law claims to the extent that they were based on the newspaper advertisements).

Accordingly, we will decline to exercise supplemental jurisdiction over the plaintiff's state law claims in Count II and Count VI of his complaint and will dismiss them without prejudice to plaintiff's right to bring these claims in state court. We reserve jurisdiction over plaintiff's state law claim in Count IV against Spleen since we have not dismissed his related federal claim in Count III against defendants Spleen, Muldowney and the City of Pottsville.

### Conclusion

Upon consideration of defendants' Motions for Summary Judgment, and for the reasons set forth in the foregoing Memorandum, we hold the following: Defendants Murton, Griffiths, Repp and Kurtz are granted full summary judgment in their official and individual capacities with regard to all federal claims against them in plaintiff's complaint; Defendant Schuylkill County is granted full summary judgment with regard to all federal claims against it in plaintiff's complaint; Defendant Muldowney is granted partial summary judgment in his official and individual capacity with regard to federal claims against him in Count I of plaintiff's complaint and any others that are based on the liability of defendant Murton; Defendant City of Pottsville is granted partial summary judgment with regard to federal claims against it in Count I of plaintiff's complaint and any others that are based on the liability of defendant Murton. We deny, without discussion, plaintiff's Motion to Strike. An appropriate order follows.

### *ORDER*

AND NOW, this 25th day of October, 1994, upon consideration of Defendants' Motions

---

**35.** We also grant summary judgment to Deputy Sheriff Griffiths in his official capacity since he is also not an official policymaking authority for the County of Schuylkill under *Pembaur.*

**36.** 28 U.S.C. § 1367 codified the common law abstention doctrines and reads in relevant part: (c) The district courts may decline to exercise supplemental jurisdiction over a claim under

subsection (a) if (3) the district court has dismissed all claims over which it has original jurisdiction.

**37.** We maintain jurisdiction over plaintiff's federal claim in Count III of his complaint against defendants Spleen, Muldowney, and the City of Pottsville.

for Summary Judgment, it is hereby **OR-DERED** as follows:

1. Defendants Murton and Repp's Motions for Summary Judgment, filed on August 12, 1994, are **GRANTED.** Defendant Griffiths Motion for Summary Judgment, filed on August 1, 1994, is **GRANTED.** Defendants Kurtz and County of Schuylkill's Motions for Summary Judgment, filed on August 2, 1994, are **GRANTED.** Defendants Muldowney and City of Pottsville's Motions for Partial Summary Judgment, filed on August 12, 1994, are **GRANTED.**

2. When final judgment on this matter is entered, judgment will also be entered in the following manner:

a. Judgment will be **GRANTED** in favor of defendants Murton, Griffiths, Repp, and Muldowney in their individual and official capacities as to Count I, § 1983 claim.

b. Judgment will be **GRANTED** in favor of defendant City of Pottsville with regard to any claims against it based on the liability of defendants Murton and Repp.

c. Judgment will be **GRANTED** in favor of defendant Kurtz in his individual and official capacity as to Count V, § 1983 claim.

d. Judgment will be **GRANTED** in favor of defendant County of Schuylkill as to Count V.

3. The following state law claims will be **DISMISSED:**

a. Count II, state law claim of false arrest, against Murton and Griffiths.

b. Count VI, state law claim of false imprisonment, against Kurtz.

Dismissal of state law claims will be **WITHOUT PREJUDICE** to plaintiff's right to reassert these claims in state court.

4. The trial shall proceed as to Count III, § 1983 claim, against defendants Spleen, Muldowney and the City of Pottsville, and as to Count IV, state law malicious prosecution claim, against defendant Spleen.

5. Plaintiff's Motion to Strike portions of the Affidavits of defendants David Kurtz and Ronald Griffiths, filed on August 19, 1994, is **DENIED.**